Donald F. **JUHNKE**, Plaintiff-Appellant,

v.

**EIG CORPORATION**, a corporation, Defendant-Appellee.

No. 24394.

United States Court of Appeals, Ninth Circuit.

July 6, 1971.

Rehearing Denied Aug. 6, 1971.

Urban L. Roth (argued), of Poor, McKenzie, Roth, Butte, Mont., for appellant.

R. D. Corette, Jr. (argued), of Corette, Smith & Dean, Butte, Mont., for appellee.

Before CHAMBERS and DUNIWAY, Circuit Judges, and McNICHOLS, District Judge.

McNICHOLS, District Judge:

Donald F. Juhnke (hereinafter Juhnke or appellant) lost the sight of his left eye as the result of the discharge of a tear gas gun manufactured by the appellee EIG Corporation (hereinafter EIG or appellee). He sued for damages for his personal injuries. This appeal is from a judgment on a jury verdict for the appellee and from a denial by the trial court of a motion for directed verdict, motion for judgment n. o. v. and motion for new trial.

Jurisdiction below rested on diversity of citizenship, 28 U.S.C. § 1332. We have jurisdiction by virtue of 28 U.S.C. § 1291.

Appellant was employed by the Federal Aviation Agency at Butte, Montana. On the day of his accident he reported for work at 8:00 A.M., intending to engage in an aircraft familiarization flight. He went to an office desk which apparently was shared by a number of employees and opened a drawer to obtain a needed form. In the desk was the tear gas gun in question which had been inadvertently left there that morning by another employee who had completed her shift. The gun was approximately the size and shape of a large fountain pen or a pocket size flashlight, was silver in color and bore no readily discernible warning or indication that it was other than a flashlight or a fountain pen. Juhnke removed the article from the drawer, held it up so as to be able to see it, and in experimenting with it, activated the trigger device which caused an explosion and an emission of tear gas which struck his face and eye, ultimately leading to the loss of vision in the left eye.

It was undisputed that EIG had imported the gun in question along with several thousand others, which had apparently been manufactured to EIG's specification in Japan. For the purpose of this appeal, it is tacitly agreed that EIG was in legal effect the manufacturer of the gun and subject to whatever liability was attributable to the manufacturer.[1]

The complaint below alleged that the gun was defective in design and manufacture and was an inherently dangerous instrumentality. By answer these contentions were put in issue and affirmatively it was contended that Juhnke was contributorily negligent and that intervening and/or unforeseen acts of third parties proximately caused the injury or otherwise insulated the defendant from liability.

At the close of the evidence plaintiff moved for a directed verdict on the issue of liability, which motion was taken under advisement and later denied. The first alleged error is based on the denial of this motion, in conjunction with a follow-up motion for judgment notwithstanding the verdict made appropriately after trial. The trial judge in his formal order summarized the state of the evidence in this language:

"* * * Looking at the evidence in the light most favorable to the defendant, there presents itself a substantial question as to whether the lack of a warning on the tear gas gun constituted a defect and if so, whether this was the proximate cause of the plaintiff's injuries or whether the conduct of Pat Thompson (the co-employee and owner of the tear gas gun, who left it in the drawer) was an independent intervening cause and therefore the sole proximate cause of the

---

1. Initially the fellow employee who owned the tear gas gun and the retailer selling the same were named as parties, but were later eliminated and the ultimate suit was solely against the manufacturer, EIG.

injury. Under the circumstances of this case these questions are for the fact finder and even if strict liability was the law of Montana, a directed verdict for the plaintiff would have been improper and therefore to grant plaintiff's motion for judgment notwithstanding the verdict would be improper."

For all practical purposes a motion for directed verdict and the subsequent motion for judgment notwithstanding the verdict are measured by the same standards as the latter is merely a renewal of the former. Standard Acc. Ins. Co. of Detroit, Mich. v. Winget et al. (9th Cir. 1952) 197 F.2d 97; Dun & Bradstreet, Inc. v. Miller (5th Cir. 1968) 398 F.2d 218. Only in an exceptional case will the plaintiff in an accident case be entitled to a directed verdict on his behalf. Powers v. Continental Casualty Company (8th Cir. 1962) 301 F.2d 386.

The trial court was obliged to view the evidence and all the reasonable inferences most favorable to the appellee even though contrary inferences might reasonably be drawn. Case-Swayne Co. v. Sunkist Growers, Inc. (9th Cir. 1966) 369 F.2d 449; Helene Curtis Industries, Inc. v. Pruitt (5th Cir. 1967) 385 F.2d 841.

A verdict could have been directed here only if the evidence, in the light of the foregoing standards, was such that the court could say that as a matter of law the evidence was capable of only one interpretation and that in favor of liability. Wong v. Swier (9th Cir. 1959) 267 F.2d 749.

The very experienced trial judge was thoroughly familiar with these well established principles governing motions for directed verdicts and motions notwithstanding the verdict as is shown by the above quotation from his opinion. He found that, measured by these criteria, issues remained for the trier of fact, the jury, and he denied the motions. We believe his determination of this issue was the correct one.

Appellant pled and tried the case on the issues of common law negligence and manufacturer's strick liability in tort. However, at the stage of the trial where proposed instructions were being discussed between court and counsel, appellant withdrew his previously proposed instructions on the strict liability theory and the matter went to the jury as an ordinary negligence case.[2]

When appellant sought a new trial, as an alternative to the motion for judgment notwithstanding the verdict, the court pointed out that the strict liability issue had been withdrawn in these words:

"During the settling of instructions with the court, counsel for the plaintiff withdrew his instructions pertaining to strict liability and elected to send the case to the jury on a common law negligence theory. Thus plaintiff rightly concedes that 'it is limited to common law issues in asking for a new trial under Rule 29.' The court finds no sufficient basis upon which to grant a new trial."

The record discloses that the jury was correctly instructed on the theory of law under which the case was submitted to them. No persuasive grounds for new trial were presented and the trial court properly denied the motion.

2. Plaintiff chose to submit the case to the jury on a theory of common law negligence for tactical reasons that may have appeared sound at the time. He now attempts to resurrect his strict liability theory by arguing that a directed verdict or judgment N.O.V. should have been granted based on that theory. As we have mentioned, such a result would have been improper because jury questions were presented on the issues of defect and causation. This opinion, however, is not to be construed as holding that a strict liability approach would not apply to the facts of this case had plaintiff, chosen to submit that theory to the jury. Compare Davis v. Wyeth Laboratories, Inc. (9th Cir., 1968) 399 F.2d 121, 127–131.

Other alleged errors, dealing with the rejection of evidence and relative to instructions given and refused, have been examined and are found to be without merit and not to require discussion.

We find no error and consequently affirm.