Stephen S. **DURISH, as Receiver for Texas Fidelity Life Insurance Company, Plaintiff,**

v.

Bobby Joe **USELTON, Individually and d/b/a Uselton's Insurance Agency, Uselton's Insurance Agency, John W. Porter, Vaughn A. Andrus, Robert W. Cochran, and Betty Baker, Defendants.**

Civ. A. No. CA-7-88-034.

United States District Court,
N.D. Texas,
Wichita Falls Division.

Aug. 8, 1990.

As Modified April 2, 1991.

Greg White, McGregor, White, Malesovas & McSwain, Waco, Tex., for plaintiff.

Bobby Joe Uselton, pro se.

Betty R. Baker, pro se.

Dottie Murphy, Wichita Falls, Tex., Royce Coleman, Denton, Tex., for defendants.

## MODIFIED MEMORANDUM OPINION AND ORDER

MARY LOU ROBINSON, District Judge.

Before the Court are the timely motions of Defendants ANDRUS, COCHRAN, PORTER and BAKER (the Defendants) for judgment notwithstanding the verdict, to alter or amend the judgment, or for a new trial, and Plaintiff STEPHEN S. DURISH's (Plaintiff) response in opposition. Defendants allege various grounds for these motions, one ground being that one of Plaintiff's causes of action is barred by the statute of limitations. For the following reasons, Defendants' motions are granted in part.

## I. BACKGROUND

This is a case for damages brought against persons alleged to be former officers and directors of a now insolvent insurance company, Texas Fidelity Life Insurance Company (Texas Fidelity). The Plaintiff, Stephen S. Durish, has been duly appointed as Receiver for Texas Fidelity. He appears in this case in his representative capacity and sues on behalf of Texas Fidelity itself. All of the Defendants were found by the jury to be directors or officers of Texas Fidelity during the relevant times. Defendants do not dispute this finding.

Texas Fidelity, chartered by the State of Texas in 1944 as Rains County Burial Association, was originally organized to provide life insurance in small amounts to Texas residents. For many years this company was limited in the types of policies it could lawfully issue. In 1978 the company became a stipulated premium insurance company and was authorized to issue insurance policies in larger amounts. In 1981, John W. Porter sold 75% of his interest in Texas Fidelity to Bobby Joe Uselton. In 1984, pursuant to an application filed by Uselton with the Texas Board of Insurance, Texas

Fidelity was changed from a stipulated premium company to a legal reserve company.

In general, stipulated premium companies are limited in the amounts of risk they may insure. Legal reserve companies are not limited in the amount of risk they may underwrite except to the extent that their financial strength must demonstrate an ability to cover the risks that they propose to underwrite. The net result of this change was that Texas Fidelity was able to underwrite policies that could potentially place the financial security of the company at greater risk.

Texas Fidelity chose to underwrite and market to the public an insurance policy designed to provide indemnity for hospital expenses. Before such policies could be marketed, they had to be submitted to state regulatory agencies for approval. In 1984, the form of the Texas Fidelity hospital indemnity plan was approved by the State Board of Insurance.

The effect of this indemnity plan on Texas Fidelity was disastrous. On April 11, 1985, Texas Fidelity was placed under supervision. On October 25, 1985, the company was placed in conservation. In August, 1986, it was placed into receivership. This lawsuit was filed by the receiver in April of 1988.

Plaintiff sought damages under a negligence theory [1] and for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* (RICO). Trial commenced April 3, 1990; the jury returned its verdict on April 10, 1990. Judgment on the verdict was entered April 16, 1990, awarding Plaintiff his damages on the negligence claim in the amount of $654,000.00, plus exemplary damages.[2] It is from this verdict and judgment that the Defendants seek relief.

The jury unanimously found all Defendants liable to Plaintiff on the negligence claims, and found only Defendant Uselton liable on the RICO claim.[3] Uselton does not join in these motions and has filed no post-judgment motions, therefore this opinion does not address the jury's RICO findings.

## II. THE PARTIES' CONTENTIONS

Defendants state in their joint motions that they have conclusively established a bar to Plaintiff's recovery under a negligence theory by operation of the Texas statute of limitations. Citing the jury's finding that the date the Plaintiff knew or should have known of any wrongful act by a Defendant was August 14, 1984,[4] Defendants assert that the evidence cannot support a conclusion that this action was filed within the two year limitations period allowed under Texas law for negligence actions.[5]

Defendants further assert that punitive or exemplary damages should not be as-

---

1. The Plaintiff asserted that the Defendants, as officers or directors of an insurance company, breached certain legal or fiduciary duties owed to Texas Fidelity. He also claimed that the Defendants were negligent in breaching their duty of due care owed to Texas Fidelity.

2. The jury awarded exemplary damages as follows:

   $  7,500.00 against Cochran
   $ 50,000.00 against Porter
   $100,000.00 against Andrus
   $250,000.00 against Uselton

3. The jury assessed damages against Uselton on the RICO claim in the sum of $1,041,000.00. These damages were trebled pursuant to § 1964(c) of the RICO Act.

4. This question, number fourteen, stated:

   Find the date on which, in the exercise of reasonable diligence, the Plaintiff knew or should have known of any alleged wrongful act by a Defendant.

   Answer by stating a specific date: <u>August 14, 1984</u>

   This was the date the form of the Texas Fidelity hospital indemnity plan was approved by the Texas regulatory board then responsible for approval of such forms.

5. Defendant relies on § 16.003 of the Texas Civil Practice and Remedies Code, which states:

   (a) A person must bring suit for trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another ... not later than two years after the day the cause of action accrues.

   The Revisor's Note to this Code section states "[t]he Code Construction Act (V.A.C.S. Article 5429b–2) includes business entities and governmental entities within the definition of 'person.'"

sessed because the question as posed to the jury does not encompass a finding of gross negligence necessary for award of such damages under Texas law. Finally, Defendants state the verdict either has no evidence in its support or the evidence is legally and/or factually insufficient to support a verdict and judgment.

Plaintiff responds by stating that the evidence shows all of the Defendants were in effective control of Texas Fidelity until August of 1986, the date a permanent receiver was appointed over Texas Fidelity. Durish points out that the only factual issue submitted to the jury regarding control was in Question No. 8, wherein the jury found all Defendants "were directors or officers of Texas Fidelity during the relevant times." Reasoning that this finding proves the existence of adverse control over Texas Fidelity by its Defendant officers or directors until August of 1986, and that this control is sufficient to toll the running of limitations, Plaintiff asserts the burden was on the Defendants to seek a determination by the jury of when this adverse control ended. He points out that Defendants failed to seek a jury submission on this issue, and, to the extent that any factual question existed about the date this control ended, Durish states the Defendants have waived their right to now raise this issue. Plaintiff asserts that the evidence must be interpreted by the Court to support the jury's findings regarding the Defendants' liability for damages to Texas Fidelity.

Plaintiff also argues that art. 21.28 § 4(g) of the Texas Insurance Code extends or "tolls" the two year tort statute of limitations applicable to this negligence action, making in effect a three year limitations period. He argues in the alternative that the correct statute to apply in the circumstance of this action is not the two year tort statute but a general four year limitations period.[6]

Finally, as to the jury's assessment of exemplary damages, Plaintiff asserts that

the charge as a whole adequately instructed the jury on the legal standards applicable to a finding of gross negligence. He also points out that even if it did not, no objection to the question as submitted or to the instructions given was raised by any Defendant. Defendants do not dispute this last statement.

## III. STANDARDS

■ A motion for judgment notwithstanding the verdict is governed by Rule 50 of the Federal Rules of Civil Procedure. The standard is the same as the standard for granting a directed verdict. *Moran v. Raymond Corp.*, 484 F.2d 1008, 1014 (7th Cir.1973), *cert. denied*, 415 U.S. 932, 94 S.Ct. 1445, 39 L.Ed.2d 490 (1974); *Juhnke v. EIG Corp.*, 444 F.2d 1323, 1325 (9th Cir.1971); Fed.R.Civ.Pro. 50(a) & (b). *See generally* Wright & Miller, *Federal Practice & Procedure 2d* § 2521 *et seq.* (1973) (Wright & Miller).

■ A motion for new trial is generally committed to the sound discretion of the trial court. *See Globe Liquor Co. v. San Roman*, 332 U.S. 571, 573, 68 S.Ct. 246, 247, 92 L.Ed. 177 (1948); Fed.R.Civ.Pro. 59; Wright & Miller, *supra*, § 2803 (1973). The burden is on the moving party to show harmful error. *Call Carl, Inc. v. BP Oil Corp.*, 403 F.Supp. 568, 577 (D.Md.1975), *aff'd in part & rev'd in part*, 554 F.2d 623, *cert. denied*, 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed.2d 280 (1977). *See generally* Wright & Miller, *supra*, § 2800 *et seq.* (1973).

"No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds for the objection." Fed.R.Civ.Pro. 51. Where a Court utilizes a special verdict and it "omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires the party demands its submission to the jury." Fed.R.Civ.Pro. 49(a). "As to an

---

**6.** Plaintiff does not brief this conclusory statement, and the Court finds it without merit. Under Plaintiff's tort cause of action, he did *not*

assert a claim for fraud by the Defendants upon Texas Fidelity.

issue omitted without such demand the court may make a finding; or, ... it shall be deemed to have made a finding in accord with the judgment on the special verdict." *Id. See generally* Wright & Miller, *supra,* §§ 2551–56 (1973).

Motions to modify, alter or amend a judgment fall under Rules 59 and 60. "A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment," Fed.R.Civ.Pro. 59(e), and upon such "motion and terms as are just, the court may relieve a party ... from a final judgment ... for ... reasons ... justifying relief from the operation of the judgment." *Id.* at Rule 60(b)(6). *See generally* Wright & Miller, *supra,* § 2817 (1973).

## IV. DISCUSSION

As Defendants concede, under the doctrine of "adverse domination" the running of limitations is tolled as to a corporate plaintiff's cause of action against its own directors and officers while such corporation continues under the domination of the wrongdoers in question. *See International Bankers Life Ins. Co. v. Holloway,* 368 S.W.2d 567, 580 (Tex.1988) (citing 3A *Fletcher Cyclopedia Corporations* § 1306.2 (1975)). *See also* 15 Tex.Jur.3d *Corporations* § 165 (1981) ("Where ... the corporation has suffered loss ... through the negligent or wrongful acts of those in control of the affairs of the corporation, ... an action must be brought by and in the name of the corporation."). The jury found that all of the Defendants "were either officers or directors of Texas Fidelity during the relevant times." It is undisputed law that the officers and directors of a corporation control and dominate the corporation. *See* 15 Tex.Jur.3d *Corporations* §§ 246–88 (1981).

There was no evidence introduced at trial that persons other than the Defendants were officers or directors of Texas Fidelity during the relevant times. Further, it is clear that the Defendants' domination and control was actually adverse to Texas Fidelity's interests because the jury found that the Defendants' acts proximately caused it significant damages. Therefore the running of limitations is tolled as to Texas Fidelity's cause of action against the Defendants until it, or a person otherwise entitled to bring suit on its behalf, was no longer dominated by the Defendants. The date this domination ended becomes the factual question at issue.

The following are relevant dates for purposes of this issue: 1) August 14, 1984—the date the state approved the form of the hospital indemnity policy and date the jury found that Texas Fidelity knew or should have known of any alleged wrongful act by a Defendant; 2) October 25, 1985—the date of appointment of a conservator over Texas Fidelity; 3) March 10, 1986—the date of appointment of a temporary receiver for Texas Fidelity; 4) August 18, 1986—the date of appointment of a permanent receiver; and 5) April 11, 1988—the date this suit was filed.

Defendants assert that October 25, 1985, the date the conservator was appointed, is the date adverse control ended.[7] However, the ending date cannot be when the conservator was appointed because the evidence in this action shows that he left actual control over Texas Fidelity with its Board of Directors and officers. When the conservator was appointed he was already aware of the problems with Texas Fidelity to some extent,[8] but otherwise there is no legal significance to this date.

---

**7.** The conservator was appointed by order of the Texas Commissioner of Insurance, pursuant to Tex.Ins.Code Ann. art. 21.28–A. This order required him to "take all necessary measures to preserve, protect and recover the property of ... [Texas Fidelity], including claims and causes of action" on its behalf. He was therefore authorized to "prosecute any suit or suits necessary" to protect or recover the "assets and property" of Texas Fidelity. While it is clear that on this date the conservator had the author-

ity and duty to file a negligence suit, this does not answer the question of whether he was in fact wrongfully prevented from doing so at that time.

**8.** On April 11, 1985, the person who later became conservator of Texas Fidelity was first appointed a statutory supervisor of Texas Fidelity by order of the Texas Insurance Commissioner. While supervisor he acquired knowledge concerning the precarious financial condition of

There is no evidence of the date any director resigned from the Board. Likewise, Defendants do not point to a date on which any corporate officer resigned. Therefore the earliest possible date on which Defendants' adverse control over Texas Fidelity could have ended is the day the temporary receiver was appointed, in March of 1986. By operation of the Texas Insurance Code, the appointment of a receiver requires him or her to take charge of the insolvent insurer, removes the directors and officers from control of the insurance company, and vests title to all rights of action and property in the receiver. *See* Tex.Ins.Code Ann. art. 21.28 § 2(a), (b), (c) & (e) (Vernon Supp.1990) (amendments effective June 15, 1985). This is the date the receiver's cause of action accrued and therefore the date upon which limitations began to run on Plaintiff's negligence cause of action.[9]

The jury was asked to "[f]ind the date on which, in the exercise of reasonable diligence, the Plaintiff knew or should have known of any alleged wrongful act by a Defendant." It answered by giving the specific date of August 14, 1984.[10] However, the jury's answer can be disregarded because this question is directed towards the Texas "discovery rule" concerning accrual of causes of actions, and it does not address the separate question of whether Texas Fidelity could have brought suit for Defendants' wrongful acts on, or after, this date.

■ Assuming the March, 1986, date is the correct date upon which limitation began to run, an assumption which Plaintiff contests, the next question concerns the correct limitations period to apply. Defendants state the limitations period to apply is the two year period under Texas law for negligence actions. *See* Tex.Civ.Prac. & Rem.Code § 16.003 (Vernon 1986). If correct this would bar Plaintiff's recovery. However, the receiver of an insolvent insurance company is given an automatic one year limitations "extension" pursuant to art. 21.28 § 4(g) of the Texas Insurance Code.[11] The issue now before the Court is the nature and exact method of operation of this one year period.

There are no cases deciding whether this Code provision tolls any applicable limitations statue to create, in the circumstances of this negligence action, a three year limitations period as asserted by Plaintiff.[12]

---

the corporation, of its inadequate record keeping practices, and of the overall level of management experience, or lack thereof. He gained this knowledge by way of reports from consultants he had hired to examine Texas Fidelity. He also received a report outlining serious problems relating to the company's sales agents and the marketing of the hospital indemnity plan, stating that this plan had created most of the financial problems with the company. These reports indicate that the supervisor had actual knowledge of Texas Fidelity's problems and either knew or should have known of the officers' and directors' potential liability when he was appointed conservator six and one-half months later, in October of 1985.

9. Upon his appointment by the state court in March of 1986, the temporary receiver was duty bound and fully capable, in fact as well as by law, of pursuing a negligence action on behalf of Texas Fidelity. *See* Tex.Ins.Code Ann. art. 21.28 § 2 (Vernon 1981).

10. The damages to Texas Fidelity were basically caused by its issuance of a medical insurance policy which did not have adequate premium income to cover claims. This hospital indemnity plan was approved by the Board of Directors of Texas Fidelity on August 13, 1984, and the form of the plan was approved by the Texas Board of Insurance on August 14, 1984.

11. Texas Insurance Code art. 21.28 § 4(g) reads as follows:

(g) One Year Extension. The receiver shall not be required to plead to any suit in which he may be a proper party plaintiff or defendant, in any of the courts in this State until one (1) year after the date of his appointment as receiver, and the provisions of Sections 64.033, ... Civil Practice and Remedies Code, as amended, shall not apply to insolvent insurance companies being administered under this Article.

Civ.Prac. & Rem.Code § 64.033 states:

A receiver may bring suits in his official capacity without permission of the appointing court.

The receiver in this action was specifically authorized by his order of appointment to file and prosecute any suit necessary to protect the interests of Texas Fidelity.

12. In fact, there are no reported Texas cases discussing this particular subsection of the Code.

Likewise, there are no authorities discussing whether section 4(g) merely extends by one year the period during which a receiver would otherwise be required to file suit, without affecting the running of any other applicable limitations periods. Defendants claim this latter interpretation is correct.

If they are right then subsection (g) has no effect, under the facts of this action, on the two year limitations period generally imposed upon negligence actions because this one year "extension" after appointment would have itself expired prior to the expiration of the two year negligence statute of limitations.

■ Under Texas law the appointment of a receiver generally does not affect the running of a statute of limitations. *Nichols v. Wheeler*, 304 S.W.2d 229, 232 (Tex. Civ.App.—Austin 1957, writ ref'd n.r.e.). This is in accord with the general rule regarding the rights of a receiver and defenses available in actions brought by a receiver. *See* 75 C.J.S. *Receivers* §§ 327–28 (1952).

Plaintiff asserts that section 4(g) gives a one year *extension* of any limitations period to a receiver. However, the logical interpretation of the plain language of this statute is to give a receiver one year in which to file suit on behalf of the insolvent insurance company or to defend in actions on its behalf, commencing on the date of his appointment.

The Court finds that Plaintiff strains the plain language of this subsection by seeking to add one year onto any otherwise applicable limitations period, either by tolling its running or by its automatic extension. If Texas the legislature meant for this statute to be interpreted in this manner, it knew how to word this subsection to give effect to such intention. The Texas legislature has chosen not to do so. Given this fact, it follows that Plaintiff's suit was not timely filed if March, 1986, is the correct date.

■ However, Plaintiff asserts that August of 1986, the date a permanent receiver was appointed, is the correct date to apply for limitations purposes. He concludes that there is evidence to support a finding that the Defendants as a group dominated Texas Fidelity until this date and, absent a specific jury finding to the contrary, factual findings must be deemed to support this view regardless of the jury's answer to the contrary. Durish further points out that the Defendants have waived objection to such a finding by the Court due to their failure to request a jury question on this issue. Given the jury's answers regarding the liability of the Defendants and the operation of Rules 49 and 51, this contention may have merit—if it were not for the fact that the doctrine of adverse domination requires the domination be over the person or persons entitled to bring suit on behalf of the corporation, not over the corporation itself.

In this action the first nonculpable person empowered by statute and court order to bring suit on behalf of Texas Fidelity was its temporary receiver. He was appointed in March of 1986 and was not prevented by Defendants from bringing suit. There is no evidence that the Defendants ever dominated this receiver, or credible evidence that he was wrongfully prevented from bringing suit on Texas Fidelity's behalf. In fact, the overwhelming weight of the evidence is to the contrary.

The evidence shows the receiver had sufficient knowledge to charge him with legal notice sufficient to start the running of limitations by March of 1986.[13] The jury's finding in answer to Question No. 14 further supports this view, since the jury found that Texas Fidelity either knew or should have known of the Defendants' wrongful acts as early as August 14, 1984, as did its receiver by operation of actual

---

13. Notice to a corporation sufficient to commence limitations may be actual or constructive and is not limited to notice acquired in an official meeting. *See International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 580 (Tex. 1963). *See also Ruebeck v. Hunt*, 142 Tex. 167, 176 S.W.2d 738, 739 (1943) (knowledge of facts that would cause a reasonably prudent person to make inquiry which would lead to discovery of a cause of action is equivalent to knowledge of such cause of action for limitations purposes).

and constructive knowledge.[14] Therefore, even if Defendants did so dominate Texas Fidelity after appointment of the temporary receiver and up until August of 1986 as Plaintiff claims, this action would not be timely filed under the general two year limitations period for negligence actions or the one year extension pursuant to § 4(g) because by operation of law the Defendants could not, and in fact did not, dominate the receiver after March of 1986.[15]

Since this action was not filed until April of 1988, over two years later, Defendants' objections to judgment on the basis of the Texas limitation of actions statute and the proper interpretation of section 4(g) of the Texas Insurance Code have merit, and their motion for judgment notwithstanding the verdict is granted. The judgment entered by the Court will be modified in accordance with this Opinion. Given this ruling, Defendants' remaining motions need not be addressed.

## V. CONCLUSION

For the reasons stated, the Court finds that Plaintiff's recovery on a negligence action is barred by limitations.

Defendants' Motion for Judgment Notwithstanding the Verdict is therefore granted.

Judgment will be modified in accordance with this opinion.

It is SO ORDERED.

---

**14.** It is well settled that the statute of limitations will not run as to a cause of action for negligence until the plaintiff discovers or should have discovered, in the exercise of reasonable care and diligence, the nature of the injury. *Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex. 1988). This is the classic "discovery rule." *See id.*

**15.** Further, even if this Court were to deem facts to support the conclusion that Texas Fidelity was so dominated, this conclusion would require evidence that Defendants continued to control or adversely dominate Texas Fidelity until the date of appointment of the permanent receiver. However, Plaintiff points the Court to no evidence in the record in support of such a finding.