**Sandra A. AUTRY, as Receiver of Texas Employers' Insurance Association, Appellant,**

v.

**William T. DEARMAN, Individually and d/b/a William T. Dearman & Associates, Appellees.**

**No. 14–94–00661–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 8, 1996.

Rehearing Overruled, Nov. 7, 1996.

Loren R. Smith, Houston, for appellant.

Henry P. Giessel, John B. Wallace, B. Todd Wright, Houston, for appellees.

Before MURPHY, C.J., and AMIDEI and ANDERSON, JJ.

### OPINION

ANDERSON, Justice.

This appeal concerns a workers' compensation carrier's subrogation rights to a third-party settlement pursuant to former article 8307 of the Revised Civil Statutes. After a work-related injury, Jesse Villegas ("Villegas") received compensation and medical benefits from Texas Employers' Insurance Association (now in receivership and referred to collectively with its receiver, Sandra A. Autry, as "TEIA"), which provided workers' compensation insurance for Villegas's employer. The attorney representing Villegas, appellees, William T. Dearman, Individually and d/b/a William T. Dearman & Associates ("Dearman"), obtained a settlement of a personal injury suit. After a judgment non obstante veredicto (JNOV) that TEIA take nothing in its suit against Dearman to enforce its subrogation rights to the third-party settlement, TEIA brings this appeal in twelve points of error. We affirm.

While working for a landscaping company in March 1987, Villegas was bitten by a dog owned by Yolanda Brown. He sustained injuries to his hand and also claimed he injured his back when he fell. Through September 1987,[1] TEIA paid Villegas a total of $7,478.32 in compensation and medical benefits for these injuries.

Dora Oliva, the attorney handling Villegas's compensation claim, referred the personal injury claim to Dearman, who filed suit in June 1988 against Brown for damages. Brown, through her insurance company, Republic Insurance Company ("Republic"), settled the suit for $7,500 in March 1989. Dearman retained $4,215.10 in attorney's fees and expenses from the settlement funds, out of which a $1,250 referral fee was paid to Oliva. Villegas received the balance of the settlement funds in the amount of $3,284.90. Villegas acknowledged receipt of the settlement funds on April 3, 1989, and the court entered an agreed judgment dismissing the cause on May 20, 1989.

TEIA contends that it did not discover that a third-party settlement had been reached until April 11, 1990 when its representative contacted the district clerk's office and was informed of the agreed judgment. TEIA then made demand on Dearman and Republic for satisfaction of its subrogation rights. Dearman never responded, but Republic settled with TEIA for $3,739.16, half of the total benefits paid. TEIA sued Dearman on March 2, 1992, claiming conversion,

---

1. The record reflects TEIA completed its payments to Villegas in 1987, except for one last payment in early 1988.

breach of contract, fraud, and other causes of action. In his defense, Dearman denied he knew TEIA had paid compensation to Villegas. This contention was hotly disputed by TEIA at trial. In addition, Dearman asserted he was entitled to one-third of the recovery as attorney's fees pursuant to the workers' compensation statute. TEIA stipulated that Dearman was entitled to an offset in the amount paid by Republic.

The case was tried to a jury. The trial court refused to submit questions on fraud, constructive fraud, money had and received, unjust enrichment, or breach of contract. Instead, the trial court determined that conversion was the applicable cause of action. The jury answered four questions in favor of TEIA, finding that Dearman had knowledge of TEIA's subrogation rights on April 29, 1988, before he settled the third-party suit. The trial court disregarded the jury's answers, however, and granted Dearman's motion for judgment, which asserted, *inter alia,* that the two-year statute of limitations barred TEIA's conversion action brought three years after the third-party settlement. TEIA appeals from the take-nothing judgment, complaining that the trial court refused to submit all of its causes of action and erroneously found its claims barred by limitations.

■■■ When a claim for workers' compensation is made, the insurance carrier is subrogated to the rights of the injured employee and may enforce the liability of the person who caused the injury.[2] *Guillot v. Hix,* 838 S.W.2d 230, 231 (Tex.1992). TEIA's claim for subrogation is governed by the workers' compensation statute in effect in 1987, former article 8307 of the Revised Civil Statutes. Relevant portions of section 6a of article 8307 are as follows:

Recovery from third person; subrogation; attorney's fees. (a) If the injury for which compensation is payable under this law was caused under circumstances creating a legal liability in some person other than

the subscriber to pay damages in respect thereof, the employee may proceed either at law against that person to recover damages or against the association for compensation under this law.... If compensation be claimed under this law by the injured employee or his legal beneficiaries, then the association shall be subrogated to the rights of the injured employee, and may enforce in the name of the injured employee or his legal beneficiaries the liability of said other person, and in case the recovery is for a sum greater than that paid or assumed by the association to the employee or his legal beneficiaries, then out of the sum so recovered the association shall reimburse itself and pay said costs and the excess shall be paid to the injured employee or his beneficiaries. However, when the claimant is represented by an attorney, and the association's interest is not actively represented by an attorney, the association shall pay such fee to the claimant's attorney not to exceed one-third (1/3) of said subrogation recovery or as may have been agreed upon between the claimant's attorney and the association or in the absence of such agreement the court shall allow a reasonable attorney's fee to the claimant's attorney for recovery of the association's interest which in no case shall exceed thirty-three and one-third percent (33 1/3%) payable out of the association's part of the recovery....

\* \* \* \* \* \*

(c) If at the conclusion of a third party action a workmen's compensation beneficiary is entitled to compensation, the net amount recovered by such beneficiary from the third party action shall be applied to reimburse the association for past benefits and medical expenses paid....

Act of May 17, 1985, 69th Leg., R.S., ch. 326, § 1, 1985 Tex. Gen. Laws 1387, *repealed by* Act of December 11, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(10), 1989 Tex. Gen. Laws

---

2. Generally, rights conferred by subrogation are entirely derivative of the subrogor's interest, to which the subrogee merely succeeds. *Guillot,* 838 S.W.2d at 232. "There is but one cause of action against the third party tortfeasor—that of the employee, who owns it burdened by the right of the insurance carrier to recoup itself for the compensation paid." *Phennel v. Roach,* 789 S.W.2d 612, 615 (Tex.App.—Dallas 1990, writ denied).

1, 114 (hereinafter referred to as article 8307).[3]

Under the act, an injured employee who proceeds against a third-party tortfeasor is not precluded from claiming against the employer's compensation carrier. *Watson v. Glens Falls Ins. Co.*, 505 S.W.2d 793, 795 (Tex.1974). The claimant is prevented from receiving a double recovery, however, because the carrier is entitled to reimbursement for the compensation paid. *Fort Worth Lloyds v. Haygood,* 151 Tex. 149, 246 S.W.2d 865, 869 (1952).

When a compensation carrier pays compensation to an injured employee, the carrier has a statutory right to reimbursement out of the "first money" recovered in a subsequent suit against a third-party tortfeasor. *Watson*, 505 S.W.2d at 795. The carrier is not required to intervene in the third party action to enforce its right to reimbursement. *Home Indem. Co. v. Pate*, 814 S.W.2d 497, 500–01 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *Travelers Ins. Co. v. Seidel,* 705 S.W.2d 278, 281 (Tex.App.—San Antonio 1986, writ dism'd). When the carrier is not represented by an attorney in the third-party action, the claimant's attorney's fees and court costs are to be deducted from the third-party recovery before reimbursing the carrier. *Insurance Co. of N. Am. v. Wright*, 886 S.W.2d 337, 344 (Tex.App.—Houston [1st Dist.] 1994, writ denied); *New York Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 856 S.W.2d 194, 203 (Tex.App.—Dallas 1994, no writ); *Bridges v. Texas A & M Univ. Sys.*, 790 S.W.2d 831, 833–34 (Tex.App.—Houston [14th Dist.] 1990, no writ).[4]

In its first four points of error, TEIA attacks the trial court's refusal to submit questions on fraud, constructive fraud, money had and received, and unjust enrichment. In point of error six, TEIA complains that the court erred in refusing to submit its question on breach of contract. However,

TEIA failed to support its sixth point of error with any legal authority. A point of error not supported by authority is waived. *Trenholm v. Ratcliff,* 646 S.W.2d 927, 934 (Tex.1983).

Rule 278 requires trial judges to submit requested questions to the jury if the pleadings and any evidence support them. *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992); Tex.R. Civ. P. 278. If error in the charge is found, we then review the pleadings, evidence, and the entire charge to determine if the error is harmful. *Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n,* 710 S.W.2d 551, 555 (Tex.1986). To reverse a judgment based on error in the charge, an appellant must establish that the error complained of amounted to such a denial of the its rights as was reasonably calculated to cause and probably did cause rendition of an improper judgment. Tex.R.App. P. 81(b)(1). A judgment must be reversed when a party is denied proper submission of a valid theory of recovery or a vital defensive issue raised by the pleadings and evidence, if timely raised and properly requested as part of the charge. *Exxon Corp. v. Perez*, 842 S.W.2d 629, 631 (Tex.1992).

Under the facts of this case, we hold that TEIA's claim is one for conversion. Conversion is the wrongful exercise of dominion and control over another's property in denial of, or inconsistent with, his rights. *Bandy v. First State Bank, Overton,* 835 S.W.2d 609, 622 (Tex.1992). An action lies for conversion of money when its identification is possible and there is an obligation to deliver the specific money in question. *Houston Nat'l Bank v. Biber*, 613 S.W.2d 771, 774 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). One who accepts and benefits from at least a portion of the proceeds of a third-party settlement, while having actual notice of the compensation carri-

---

3. These provisions are now codified at Tex. Lab. Code Ann. § 417.001–003 (Vernon 1996). The codification was made without substantive changes. Tex. Lab.Code Ann. § 1.001 (Vernon 1996).

4. In view of our disposition of this appeal, we need not address appellees' first reply point,

which is in the nature of a cross-point, contending that after deducting from the third-party settlement an offset for the settlement paid by Republic, and Dearman's attorney's fees and litigation costs, TEIA is not entitled to any funds from that third-party settlement.

er's subrogation rights, does so wrongfully and is subject to a cause of action for conversion. *Pate,* 814 S.W.2d at 498–99; *Prewitt and Sampson v. City of Dallas,* 713 S.W.2d 720, 722 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

 When a third-party tortfeasor pays a settlement or judgment to an employee who has been receiving workers' compensation benefits, the tortfeasor[5] and the employee are jointly and severally liable to the compensation carrier for its entire subrogation claim. *Watson,* 505 S.W.2d at 795; *Performance Ins. Co. v. Frans,* 902 S.W.2d 582, 585 (Tex.App.—Houston [1st Dist.] 1995, writ denied); *Home Indem. Co. v. Pate,* 866 S.W.2d 277, 281 (Tex.App.—Houston [1st Dist.] 1993, writ withdrawn). If a third-party tortfeasor and its insurer wrongfully pay out to the employee money that belongs to the compensation carrier, the third-party tortfeasor and its insurance company are liable for the total amount paid by the carrier. *Pate,* 814 S.W.2d at 498–99. This liability has been extended to an attorney representing an injured worker who benefitted by receiving a portion of settlement funds paid by the third-party tortfeasor. *See Prewitt and Sampson,* 713 S.W.2d at 722. Even though TEIA could have obtained full reimbursement from Republic, Brown's insurance carrier, it chose instead to settle for one-half of Republic's liability.

 The right of subrogation exists only by virtue of the workers' compensation statute. *Traders & General Ins. Co. v. West Texas Utilities Co.,* 140 Tex. 57, 165 S.W.2d 713, 716 (1942). TEIA asserts that its claims for fraud, breach of contract and other quasi-contractual theories of recovery are based on its contention that it relied on a representation by Dearman and/or his employee that he would seek recovery of its subrogation claim from the third party's insurance company. We must conclude that these claims are barred by the requirements of the statute. Article 8307, section 6a requires a written agreement for an attorney to act on behalf of

the carrier in protecting its subrogation rights, in relevant part as follows:

> In any case where the claimant's attorney is also representing the subrogated association, a full written disclosure must be made to the claimant, prior to actual employment by the association as an attorney, and acknowledged by the claimant, and a signed copy of the same furnished to all concerned parties·and made a part of the file in the Industrial Accident Board. A copy of the disclosure with authorization and consent, shall also be filed with the claimant's pleadings prior to any judgment tendered and approved by the court.

Thus, TEIA could not have relied on any offer by Dearman to represent it or protect its rights unless there was such a written agreement approved by Villegas. There was none.

We hold that TEIA's claims of fraud, breach of contract, and its quasi-contract claims cannot succeed as a matter of law. First, there was no contractual relationship between Dearman and TEIA. Secondly, TEIA's rights are statutory. We decline to impose a fiduciary duty on Dearman to notify TEIA of the third-party settlement, as TEIA urges, where no such duty is required under the statute.

 In addition, there is no evidence supporting TEIA's claims of fraud, constructive fraud, money had and received, and unjust enrichment. To be entitled to submission of its fraud and implied contract claims, TEIA was required to establish that it reasonably relied on a misrepresentation or false promise. *See, e.g., DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 688 (Tex.1990) (fraud requires material misrepresentation known to be false and intended to be acted upon, reliance, and causation of injury). These claims are all based on TEIA's contention that it relied on Dearman's misrepresentation that he would seek recovery on its behalf from the third party's insurance company. There is no evidence of reliance by TEIA on Dearman's alleged representation to act on its behalf in asserting its subrogation rights.

---

5. At oral submission, counsel for TEIA acknowledged that it could have filed suit against Brown, but that it did not do so.

TEIA effectively asks this court to assume it relied on Dearman to recover its compensation payments simply because it did nothing on its own to secure its rights. In none of the correspondence between Dearman's office and TEIA is there evidence of reliance. At most, there is only surmise that TEIA *might* have relied, which amounts to no evidence. *See Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 755 (Tex.1970) ("when the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, such evidence is in legal effect no evidence"). Moreover, TEIA could not have reasonably relied on any alleged representation by Dearman that he would act on its behalf because it did not obtain the required written agreement and the claimant's consent. We hold TEIA was not denied submission of valid theories of recovery. We overrule TEIA's points of error one through four.

■■■■ Conversion, the only applicable cause of action under these facts, is governed by the two-year statute of limitations. Tex. Civ. Prac. & Rem.Code Ann. § 16.003(a) (Vernon Supp.1996).[6] We therefore overrule point of error twelve which contends that TEIA's claims are not barred because the four year statute governed its fraud, constructive fraud, money had and received, unjust enrichment, and breach of contract claims.[7] TEIA also argues that because it seeks reimbursement for its subrogation claim, its suit is an action for debt and is governed by the four-year statute. We disagree. While we recognize that the term "reimbursement" is used in cases involving a compensation carrier's recoupment of the benefits it paid, the carrier's suit is not an action for debt. The carrier is the owner of the first money received in the third-party settlement, and when those funds are paid to someone else, they have been converted. Consequently, we overrule TEIA's point of error eight which asserts that the four-year statute is applicable.[8]

■■■■ In points nine through eleven, TEIA argues that limitations does not bar its conversion claims. As noted earlier, Dearman moved the trial court to disregard the jury's verdict and to enter a take-nothing judgment based on limitations. JNOV is proper when the evidence is conclusive and one party is entitled to prevail as a matter of law, or when a legal principle precludes recovery. *John Masek Corp. v. Davis*, 848 S.W.2d 170, 173 (Tex.App.—Houston [1st Dist.] 1992, writ denied). When a claim is

6. Section 16.003(a) provides in relevant part:

[A] person must bring suit for trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another, personal injury, forcible entry and detainer, and forcible detainer not later than two years after the day the cause of action accrues.

7. Moreover, we note that TEIA's claims for money had and received and unjust enrichment would be barred by the two-year statute. *See Cherokee Water Co. v. Advance Oil & Gas Co.*, 843 S.W.2d 132, 135 (Tex.App.—Texarkana 1992, writ denied) (holding that cause of action for money had and received accrues when money is paid, and two-year statute of limitations applies); *Hornblower & Weeks Hemphill, Noyes, Inc. v. Crane*, 586 S.W.2d 582, 587 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.) (holding that unjust enrichment is governed by the two-year statute).

8. TEIA cites two federal cases where the four-year statute of limitations was applied to suits concerning subrogation liens. *See Law Offices of Moore & Assocs.. v. Aetna Ins. Co.*, 902 F.2d 418, 420 (5th Cir.1990) and *Rockwood Ins. Co. v. Williamson*, 596 F.Supp. 1524, 1528 (N.D.Tex. 1984). We decline to follow these cases. In *Rockwood*, the suit was against the claimant, and because it was based on a written contract, the four year statute of limitations applied. Here, TEIA had no written contract with Dearman. In *Moore*, an attorney sued a workers' compensation insurer to recover attorney's fees for his role in relieving the insurer of future compensation payments. The suit was based on an implied contract theory and article 8307, § 6a to recover compensation for services rendered, and the Court applied the four year statute of limitations. However, we have held that article 8307, § 6a requires a written agreement for an attorney to act on behalf of the carrier in protecting its subrogation rights, and that TEIA could not have relied on any offer of representation absent a written agreement approved by Villegas, and there was none. Moreover, we are bound to follow only United States Supreme Court and Texas Supreme Court decisions on questions of law in civil cases. *See Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex.1993); *Mohamed v. Exxon Corp.*, 796 S.W.2d 751, 753–54 (Tex.App.—Houston [14th Dist.] 1990, writ denied).

barred by limitations, judgment on the verdict is precluded and JNOV is proper. *Stevenson v. Koutzarov,* 795 S.W.2d 313, 319–20 (Tex.App.—Houston [1st Dist.] 1990, writ denied). We will affirm a JNOV when the record demonstrates that a claim found by the jury is barred as a matter of law. *See Graphilter Corp. v. Vinson,* 518 S.W.2d 952, 955 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.).

First, TEIA contends in point of error nine that its claims are not barred because limitations was tolled for one year by its receivership. TEIA filed for receivership on February 1, 1991, and it contends its receiver was given an automatic one-year extension of time to file suit pursuant to article 21.28, section 4(g) of the Insurance Code.[9] We disagree with TEIA's interpretation of this provision. The only case cited by TEIA on this issue concerned bankruptcy and is not on point. *See Martindale Mortgage Co. v. Crow,* 161 S.W.2d 866 (Tex.Civ.App.—El Paso 1941, writ ref'd w.o.m.).

Generally, the appointment of a receiver does not toll limitations. *Nichols v. Wheeler,* 304 S.W.2d 229, 232 (Tex.Civ.App.—Austin 1957, writ ref'd n.r.e.). If the legislature had intended to provide for tolling of limitations by section 4(g) of article 21.28, it would have done so more plainly by specifically referring to "limitations" or "tolling" in the language of the statute. *Accord Durish v. Uselton,* 763 F.Supp. 192, 198 (N.D.Tex.1990). By seeking to add one year to any otherwise applicable limitations period, TEIA "strains the plain language" of this provision. *See id.* Even if TEIA were correct that its receiver was given an automatic one-year extension of time to file suit under article 21.28(4)(g), its suit is still barred by limitations. TEIA's conversion action accrued in April 1989 when the settlement funds were disbursed to Dearman. Applying

Civil Practices and Remedies Code section 16.003, the time for filing TEIA's suit expired in April 1991. Based on TEIA's argument under article 21.28(4)(g), the receiver was not required to plead until one year after her appointment on February 1, 1991. Thus, following TEIA's logic, the receiver was not required to plead by April 1, 1991, the deadline under section 16.003, but rather "after" the one-year hiatus which ended on February 1, 1992. Accordingly, any protection offered by article 21.28(4)(g) evaporated immediately upon expiration of the one-year period commencing February 1, 1991. *See Durish,* 763 F.Supp. at 198 (plain language of this statute gives receiver one year to file suit or defend on behalf of insolvent insurance company, commencing on date of his appointment). Since limitations had run during April 1991, TEIA's delay in filing its suit against Dearman until March 2, 1992, more than thirty days after the end of the putative suspension period and almost three years after its cause of action accrued, was fatal. Nevertheless, we conclude that section 4(g) of article 21.28 does not toll limitations. We overrule point of error nine.

TEIA complains in point of error ten that its claim did not arise until it made demand on Dearman for reimbursement and its demand was refused in April 1990. It cites the rule that where initial possession is lawful, an action for conversion does not commence until demand is made for return of the property and its return is refused. *See Reese v. Parker,* 742 S.W.2d 793, 797 n. 2 (Tex.App.—Houston [14th Dist.] 1987, no writ). No demand is required, however, for conversion that is complete. *McVea v. Verkins,* 587 S.W.2d 526, 531 (Tex.Civ.App.—Corpus Christi 1979, no writ). If the possessor's acts amount to a clear repudiation of the owner's rights, they are tantamount to a refusal after demand. *Loomis v. Sharp,* 519

---

9. Tex. Ins.Code Ann. art. 21.28, § 4(g) (Vernon Supp.1996) provides in relevant part as follows:
 The receiver shall not be required to plead to any suit in which he may be a proper party plaintiff or defendant, in any of the courts of this State until one (1) year after the date of his appointment as receiver, and the provisions of Sections 64.033 ... Civil Practice and Remedies Code, as amended, shall not apply to

insolvent insurance companies being administered under this Article.
 Section 64.033 of the Civil Practice and Remedies Code provides:
 A receiver may bring suits in his official capacity without permission of the appointing court. Tex. Civ. Prac. & Rem.Code Ann. § 64.033 (Vernon 1986).

S.W.2d 955, 958 (Tex.Civ.App.—Texarkana 1975, writ dism'd); *see also Bures v. First Nat'l Bank of Port Lavaca*, 806 S.W.2d 935, 937 (Tex.App.—Corpus Christi 1991, no writ). First, we note that Dearman had no rights to the first money received until TEIA was paid. *See Fort Worth Lloyds*, 246 S.W.2d at 869. Thus, because any conversion by Dearman was completed when funds were disbursed from the settlement between Brown and Villegas in April 1989, no demand was required. We overrule point of error ten.

In point of error eleven, TEIA argues that the trial court erred in finding its cause of action barred because limitations did not begin until it discovered the third-party settlement. TEIA contends limitations did not begin until it learned in April 1990 that Dearman converted the funds, and it timely filed suit within two years in March 1992. While this argument initially may appear facially valid, it cannot withstand careful scrutiny in light of the facts and the applicable law.

■■■ The traditional rule in Texas is that a cause of action accrues and the limitations period begins to run as soon as the claimant suffers some injury, regardless of when the injury becomes discoverable. *Trinity River Auth. v. URS Consultants, Inc.*, 889 S.W.2d 259, 262 (Tex.1994); *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex.1990). The discovery rule is an exception to the general rule and tolls the running of limitations until the time the plaintiff discovers, or through the exercise of reasonable care and diligence, should have discovered the nature of the injury. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990).

■■■ TEIA argues that discovery of its cause of action is a fact question which should have been submitted to the jury. The party seeking to use the discovery rule must plead the rule, and in a trial on the merits, must prove and secure findings on the issue,

or the discovery rule is waived. *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex.1988) (per curiam). TEIA pled delayed discovery and tendered a substantially correct question, which was refused by the trial court. *See Willis v. Maverick*, 760 S.W.2d 642, 647 (Tex.1988) (holding that proper submission of discovery rule question must include "should have discovered" element).[10]

■■■ TEIA's argument and authorities under its points alleging application of the discovery rule do not comport with its submitted question, however. It contends in its reply brief that it is entitled to deferral of accrual of its cause of action because Dearman was under a duty to disclose the third-party settlement, but fraudulently concealed the facts giving rise to the cause of action from TEIA, citing *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex.1983). Fraudulent concealment is unlike the discovery rule in that it resembles equitable estoppel. *Computer Assocs. Internat'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex.1994). Fraudulent concealment estops the defendant from relying on the statute of limitations as an affirmative defense to the plaintiff's claim. *Borderlon*, 661 S.W.2d at 908. Texas courts have recognized that fraud or concealment by the party accused of converting property may toll limitations. *See, e.g., Republic Supply Co. v. French Oil Co.*, 392 S.W.2d 462, 464 (Tex.Civ. App.—El Paso 1965, no writ).

■■■ As with the discovery rule, it was TEIA's burden to plead and secure findings on fraudulent concealment. *See First Nat'l Bank of Boston v. Champlin Petroleum Co.*, 709 S.W.2d 4, 6 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). TEIA waived its claim by failing to tender a question on fraudulent concealment. Furthermore, in the absence of a contractual agreement or fiduciary relationship, Dearman had no legal duty to disclose the settlement to TEIA. *See Seibert v. General Motors Corp.*, 853 S.W.2d

---

**10.** TEIA submitted the following question:

When do you find that TEIA discovered, or in the exercise of due diligence should have discovered, the settlement of the third-party case? Dearman's failure to submit a question as to when the cause of action accrued was not error.

The question of when a cause of action accrues is one of law for the court. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990). *Ponder v. Brice & Mankoff*, 889 S.W.2d 637, 641 (Tex.App.—Houston [14th Dist.] 1994, writ denied).

773, 778 (Tex.App.—Houston [14th Dist.] 1993, no writ). In addition, we have already found no evidence supporting TEIA's allegations of fraud in this case. We hold TEIA cannot prevail on its fraudulent concealment claim.

We now turn to application of the discovery rule apart from any fraudulent concealment. Generally, the period of limitations for conversion begins to run at the time of the unlawful taking. *Pierson v. GFH Financial Servs. Corp.* 829 S.W.2d 311, 314 (Tex.App.—Austin 1992, no writ). The discovery rule does not apply to toll the statute of limitations where a bank is sued for conversion on a forged endorsement. *Southwest Bank & Trust Co. v. Bankers Commercial Life Ins. Co.*, 563 S.W.2d 329, 332 (Tex.Civ. App.—Dallas 1978, writ ref'd n.r.e.). The Corpus Christi Court of Appeals permitted application of the rule to conversion in a different context. The court held that the rule of accrual for conversion actions where possession is initially lawful and demand would be useless, or unequivocal acts of conversion have occurred, is that the cause of action accrues upon demand and refusal or discovery of facts supporting the cause of action, whichever occurs first. *Hofland v. Elgin–Butler Brick Co.*, 834 S.W.2d 409, 414 (Tex.App.—Corpus Christi 1992, no writ). The court reasoned, for example, that the discovery rule should apply in cases of conversion where chattel is placed in possession of a bailor, and the bailor secretly sells the chattel to a third person, thereby converting it. *Id.* The facts in *Hofland* are decidedly different than those here. In *Hofland*, Elgin–Butler brought a conversion action against Border Brick, the company that collected payments on Elgin–Butler's sales of brick. Elgin–Butler also stored brick on Border Brick's property pursuant to a lease agreement. The lawsuit arose after Border Brick sold 650,000 of Elgin–Butler's brick to a third party and retained the proceeds. *Id.* at 411–12. The decision turned on the fact that Border Brick's principal, Hofland, did not disclose the brick had been sold when asked and did not originally dispute Elgin–Butler's ownership, but claimed offsets for storage and other fees under its valid possessory interest. Thus, Elgin–Butler did not

know, nor should it have known, of the conversion until it discovered the sale. *Id.* at 415. In our view, the distinguishing feature of *Hofland* is its application of the discovery rule to conversion cases where possession was initially lawful. Here, because Dearman had no right to the first money received until TEIA was paid, his possession was never lawful and his conversion was complete when funds were disbursed to him in 1989. Thus, we decline to follow the rationale in *Hofland*.

The discovery rule is a limited exception to strict compliance with the statute of limitations. *Computer Assocs.*, 918 S.W.2d at 455 and 457; *Kelley v. Rinkle*, 532 S.W.2d 947, 948 (Tex.1976). The purpose of statutes of limitations is to compel the assertion of claims within a reasonable period while the evidence is fresh in the minds of the parties and witnesses. *Computer Assocs.*, 918 S.W.2d at 455. In balancing the underlying policy of repose against the injustice of barring suit, we consider the following: (1) whether the nature of the injury incurred is inherently undiscoverable; and (2) whether the evidence of injury is objectively verifiable. *Id.* at 456. The requirement of inherent undiscoverability recognizes that the discovery rule exception should be permitted only in circumstances where "it is difficult for the injured party to learn of the negligent act or omission." *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex.1988); *see, e.g., Hays v. Hall*, 488 S.W.2d 412, 414 (Tex.1972) (unsuccessful vasectomy operation); *Gaddis v. Smith*, 417 S.W.2d 577, 578 (Tex.1967) (sponge left in patient's body during surgery). Inherently undiscoverable encompasses the requirement that the existence of the injury is not ordinarily discoverable, even though due diligence has been used. *Computer Assocs.*, 918 S.W.2d at 456.

In considering whether to permit application of the discovery rule exception to the statute of limitations in TEIA's conversion action, we review the evidence relevant to the discoverability of the claim. TEIA knew Villegas was pursuing his claim against the third-party tortfeasor, and it knew the identity of the attorneys representing both Villegas and the third party, as well as the

third party's insurance carrier and adjuster. While a carrier is not required to intervene in the suit, its failure to do so is a factor that may be considered in evaluating its efforts to secure notice of the settlement. *Cf. Computer Assocs.*, 918 S.W.2d at 457 (declining to permit application of discovery rule exception, noting that plaintiff could have discovered theft of trade secret computer source codes by using document control logs).

In *Computer Associates*, the Court held that trade secret misappropriation is capable of detection within the time allotted for bringing such suits. *Id.* To determine whether TEIA's injury due to conversion was inherently undiscoverable so as to delay the accrual date of its cause of action, we will examine the methods of discovery readily available to TEIA using reasonable diligence. The discovery rule suspends the accrual date of a cause of action until the injured party knew of, or in the exercise of reasonable diligence should have learned of, the injury giving rise to the cause of action.[11] TEIA completed the payment of benefits to Villegas during September 1987, and chose not to pursue its own action for recoupment against Brown, the tortfeasor, implicitly relying on Villegas to seek such relief, and assuming a role as an observor, monitoring the courts for information on any cause of action he might file. By early June 1988, this monitoring would have revealed the lawsuit filed by Dearman, and presented TEIA with the option to either intervene, or continue monitoring the proceeding. Pursuit of either choice by TEIA would have provided information on a timely basis about the disposition of their funds paid by the third party. Dearman's conversion in April 1989, when he disbursed the settlement, was capable of detection through reasonable diligence by TEIA.

Moreover, the record reflects that TEIA knew of, and actively utilized, various methods to detect litigation affecting its interest. By letter dated April 29, 1988, Rick Whitaker, a senior claims adjuster at TEIA during the events at issue in this case, formally notified Crawford & Crawford, Republic's ad-

juster, of TEIA's subrogation claim for the total amount of benefits paid. No similar notice to Dearman is in evidence. Records from TEIA's files indicated it periodically monitored the case, although its representatives testified that Dearman's office frequently failed to return calls or respond to requests for information. Curiously, Whitaker noted on one of his activity reports dated August 22, 1989 that he contacted the district clerk's office and was told, incorrectly, no suit had been filed by Villegas. However, that same report also bears the cause number of the third-party action and notes May 20, 1989 as the date of the agreed judgment. Despite these indications that TEIA had clear knowledge of the agreed judgment between Brown and Villegas during the summer of 1989, TEIA nevertheless contends it ultimately discovered the settlement of the suit on April 11, 1990, when Whitaker again contacted the district clerk's office and the adjuster for the third party's insurance carrier.

As in *Computer Associates*, this case turns on whether the conversion was inherently undiscoverable. *See* 918 S.W.2d at 458. We conclude that it was not. TEIA had ample opportunity and ability to discover that the third-party suit had settled and funds were disbursed. In fact, it ultimately discovered its cause of action well within the two-year limitations period when it learned that a settlement had been paid, and yet it waited almost two full years before filing suit. We hold that the discovery rule is inapplicable to TEIA's cause of action for conversion. Therefore, TEIA's claim was barred because it was not filed until March 1992, more than two years after the settlement funds were disbursed in April 1989, and almost five years after TEIA terminated payment of benefits to Villegas in September 1987. The trial court properly granted JNOV on Dearman's limitations defense. We overrule point of error eleven.

Having found that the trial court properly determined that limitations barred TEIA's only cause of action, we have considered

---

11. The record in this case does not provide a clear basis for a determination of precisely when TEIA knew that it had suffered an injury from Dearman's conversion.

TEIA's other points of error and determined that discussion of these points is not necessary to disposition of the appeal. *See* TEX. R.APP. P. 90(a). We affirm the judgment of the trial court.