CONOCO, INC., Appellant,

v.

AMARILLO NATIONAL BANK, Appellee.

No. 07–96–0036–CV.

Court of Appeals of Texas, Amarillo.

Feb. 1, 2000.

Gibson, Ochsner & Adkins (S. Tom Morris, Michael G. Smith), Amarillo, for appellant.

Mullin, Hoard & Brown (Steven L. Hoard) Amarillo, for appellee.

Before BOYD, C.J., and QUINN and JOHNSON, JJ.

JOHN T. BOYD, Chief Justice.

This appeal arises from a suit in which Amarillo National Bank (ANB) claimed that Conoco Inc. (Conoco) converted its collateral; namely, certain accounts receivable in the form of credit card proceeds generated by Centergas Incorporated (Centergas). Conoco denied the conversion and asserted the affirmative defenses of offset, consent, waiver and limitations. ANB responded to the limitations defense by asserting the discovery rule. Both parties filed motions for summary judgment, and the trial court ruled that Conoco had converted ANB's collateral as a matter of law, but reserved the determination of the discovery rule for a jury. At trial, Conoco moved for an instructed verdict, contending that the discovery rule did not apply because ANB's injury was not inherently undiscoverable. The trial court denied Conoco's motion, and the jury found that ANB did not discover, or by the exercise of reasonable care should not have discovered, Conoco's offsets of Centergas' accounts receivable within the applicable limitations period. From this jury verdict, the trial court rendered judgment for ANB.

On appeal, this court reversed the trial court judgment and remanded on the

grounds that ANB had not negated essential elements of consent and waiver, two of Conoco's affirmative defenses. *Conoco, Inc. v. Amarillo Nat. Bank*, 950 S.W.2d 790, 794 (Tex.App.—Amarillo 1997). In the course of that opinion, we concluded that ANB's conversion claim was not barred by limitations as a matter of law. In doing so, we rejected Conoco's argument that ANB could have, or should have, discovered Conoco's offsets by the exercise of reasonable diligence. *Id.* at 797–99. Conoco, *inter alia*, sought review by the supreme court of our decision on that issue. The supreme court vacated and remanded our opinion in light of its decision in *HECI v. Neel*, 982 S.W.2d 881 (Tex. 1998). Upon reconsideration of the discovery rule issue and the supreme court's decision, we find we must reverse the judgment of the trial court and render judgment for Conoco.

Before we discuss the discovery rule issue, a brief recitation of this case's factual background is necessary. Centergas, a wholesaler and retailer of petroleum products, took out a loan from ANB in June 1983. As part of the loan agreement, ANB took a security interest in Centergas' inventory and accounts receivable, which was duly perfected and continued. Some seven years later, in April 1990, Centergas entered into a Jobber Franchise Agreement with Conoco regarding the purchase and resale of Conoco's products. The Jobber Agreement entitled Conoco to apply or offset Centergas' credit card sales against its debt to Conoco for the purchase of inventory. If these amounts did not fully satisfy Centergas' debt, Conoco would draft on Centergas' ANB account to make up the difference. These drafts were authorized according to the terms of a Preauthorized Payment Agreement between Centergas, ANB, and Conoco.

Subsequently, Centergas experienced substantial losses from its retail locations. In September 1991, Centergas defaulted on $2,000,000 worth of notes held by ANB. ANB extended the notes to November 1991, but Centergas again defaulted. On December 31, 1991, ANB ceased all advances to Centergas and returned a substantial number of drafts to Centergas' suppliers. In January 1992, ANB returned Conoco's drafts on Centergas' account, and thereafter, Conoco placed Centergas on a cash-on-delivery basis for all purchases. In order to recoup its losses from the returned drafts, Conoco continued to offset credit card sales against the amount Centergas owed Conoco and applied the sales to the amount owed on the returned drafts. Centergas filed for bankruptcy on May 21, 1992, and filed bankruptcy schedules on June 17, 1992.

On May 20, 1994, ANB brought the underlying suit against Conoco, alleging that from January 1992 until February 20, 1992, Conoco converted $90,551.13 of ANB's collateral by offsetting Centergas' credit card receipts. As we have noted, in response to Conoco's limitation claim, ANB asserted the discovery rule, maintaining that it did not discover the conversion until Centergas filed its bankruptcy schedules on June 17, 1992.

Conversion actions must be commenced no later than two years after the day the cause of action accrues. Tex. Civ. Prac. & Rem.Code Ann. § 16.003(a) (Vernon 1997). The question of when a cause of action accrues is a judicial one, to be determined "with due regard to the underlying statutory policy of repose, without, however, permitting unnecessary individual injustices." *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990). The objective of statutes of limitation is to compel the assertion of claims within a reasonable period of time, while the evidence is fresh in the minds of the parties and witnesses. *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex.1996). In conversion cases, the general rule is that limitations begin to run at the time of the unlawful taking. *Rogers v. Ricane Enter., Inc.*, 930 S.W.2d 157, 166 (Tex. App.—Amarillo 1996, writ denied). However, if the original possession is lawful,

the limitation period does not begin to run until the return of the property has been demanded and refused, or until the person in possession has unequivocally exercised acts of domination over the property inconsistent with the claims of the owner or the person entitled to possession. *Id.* at 166.

■ In the case at bar, the initial possession was lawful, but ANB never made a demand upon Conoco to return the property. ANB has argued that Conoco's possession became unlawful when it began to offset the credit card receipts against Centergas' accumulated debt in early 1992. Thus, in this case, in the absence of any exception, the limitations period on ANB's cause of action against Conoco began to run no later than February 20, 1992. Clearly, then, if the discovery rule does not apply, ANB's cause of action is barred by the statute of limitations.

The discovery rule is a very limited exception to the statute of limitations, not to be applied liberally. *Altai,* 918 S.W.2d at 457. Our supreme court has instructed that "preclusion of a legal remedy alone is not enough to justify a judicial exception to the statute. The primary purpose of limitations, to prevent litigation of stale or fraudulent claims, must be kept in mind." *Robinson v. Weaver,* 550 S.W.2d 18, 20 (Tex.1977). If this is one of the limited cases to which the discovery rule is applicable, then the accrual of ANB's cause of action is deferred until ANB knew, or by exercising reasonable diligence should have known, of the facts giving rise to the cause of action. *HECI,* 982 S.W.2d at 886; *Altai,* 918 S.W.2d at 455.

■ In order for the discovery rule to be applicable, a two-prong test must first be satisfied. The injury must 1) be inherently undiscoverable, and 2) be objectively verifiable. *HECI,* 982 S.W.2d at 886, *Altai,* 918 S.W.2d at 456. In addressing this test, the supreme court has emphasized "the applicability of the discovery rule is determined categorically." *HECI,* 982 S.W.2d at 886. Thus, the question is not whether the particular injury was in fact discovered by the claimant within the limitation period, but rather, is whether "it was the type of injury that is generally discoverable by the exercise of reasonable diligence." *Id.*

■ Our inquiry, then, is whether Conoco's offset of ANB's collateral is the type of injury that is discoverable through the exercise of reasonable diligence. *See Altai,* 918 S.W.2d at 456. We believe the answer to that inquiry is yes. Secured parties must take some responsibility to ascertain the status of their collateral, especially when the debtor defaults. The discovery rule does not excuse a party from exercising reasonable diligence in protecting its own interests. *Pitman v. Lightfoot,* 937 S.W.2d 496, 510 (Tex.App.—San Antonio 1996, no writ). While the exercise of reasonable diligence is generally a question of fact, if the evidence is such that reasonable minds could not differ as to its effect, it becomes a question of law. *Enterprise–Laredo Assoc. v. Hachar's, Inc.,* 839 S.W.2d 822, 838 (Tex.App.—San Antonio 1992, writ denied *per curiam*), 843 S.W.2d 476 (Tex.1992). The facts of this case are such that the issue becomes a question of law.

If ANB, as the secured party, had begun investigation of the status of its collateral at the time of Centergas' financial difficulties and default, it would have quickly, and timely, learned of Conoco's offsets. ANB's Vice–President and Manager of the Special Assets Department, Buck Clary, acknowledged at trial that the Centergas loan was in default as of January 1992, and admitted that "it needed monitoring as to what was happening to [the] collateral, and for someone to keep up with the collateral on it." That testimony shows that ANB was aware that its collateral was at least potentially at risk. Had ANB taken measures at that time to monitor the collateral, it would have discovered Conoco's offsets. For example, it could have 1) examined its own records of Centergas' banking transactions, 2) studied the weekly reports of

Centergas' accounts receivable, and 3) queried employees of either Centergas, or Conoco, or both, as to how Centergas' debt to its suppliers was being paid. ANB was either aware, or should have been aware, of Centergas' debt to its suppliers, inasmuch as ANB had returned numerous drafts to the suppliers in early 1992. ANB also knew, or should have known, that certain suppliers, such as Conoco, had been offsetting accounts receivable, and might begin to apply the credit card purchases to the overdraft debt Centergas owed them. At the very least, ANB should have investigated the possibility.

Thus, we conclude that Conoco's actions were readily capable of detection through reasonable diligence. ANB had ample opportunity and ability to discover that the offsets were occurring. It is worthy of note that, by its own admission, ANB ultimately discovered its cause of action within the two-year limitation period when Centergas filed its bankruptcy schedules, and yet it waited almost two full years after its actual discovery before filing suit.

The trial court improperly refused to render judgment for Conoco on their limitations defense. We must, therefore, reverse the trial court's judgment and decree that ANB take nothing by its suit. Tex. R.App. P. 43.2(c).