**E.H. "Harvey" STEINHAGEN, III, and Petrotex Fuels, Inc., Appellants,**

v.

**Bob A. EHL, Appellee.**

**No. 09–01–515 CV.**

Court of Appeals of Texas, Beaumont.

Submitted Oct. 16, 2003.

Decided Jan. 22, 2004.

Roger S. McCabe, Mehaffy & Weber, Beaumont, for appellants.

Barbara J. Gardner, The Gardner Law Firm, Houston, for appellee.

Before STEVE McKEITHEN, C.J., DON BURGESS and HILL *, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

E.H. "Harvey" Steinhagen, III, and PetroTex Fuels, Inc., appeal an adverse judgment awarding Bob A. Ehl actual and exemplary damages for conversion of fuel dispensing equipment. The appellants raise four issues. In answer to their second issue, we find that the discovery rule did not defer accrual of Ehl's cause of action for conversion. Accordingly, we reverse the trial court's judgment and render judgment that Ehl take nothing.

Ehl owns a convenience store with underground storage tanks for motor fuel. Effective February 1, 1997, Ehl leased the property to Damon V. Webb. Their commercial lease agreement included equipment described in an exhibit that listed gasoline dispensing equipment that included "4 Gilbarco MPD Six Hose Dispensers." There were actually two, rather than four,

---

* The Honorable John Hill, sitting by assignment pursuant to Tex. Gov't Code Ann. § 74.003(b) (Vernon 1998).

Gilbarco dispensers, and these are the fuel pumps converted by the appellants.[1] Steinhagen is the president and sole shareholder of PetroTex. On January 31, 1997, PetroTex and Webb entered into a Fuel Consignment Agreement through which Webb sold PetroTex's fuel from the convenience store. Webb wanted to upgrade the property, so Steinhagen and Webb negotiated an arrangement where Ehl's Gilbarco pumps would be replaced with newer Gilbarco pumps equipped with credit card readers and a hose configuration that enabled use of the third underground storage tank for diesel fuel instead of medium grade gasoline.[2] Steinhagen negotiated the sale of the old pumps with Jim White, who installed the new pumps. PetroTex paid for the new, card-reading Gilbarco pumps that were installed on August 8, 1997. On August 18, 1997, White paid PetroTex $9,000 for the pumps. The proceeds were credited by PetroTex to the purchase of the new pumps.

It is undisputed that Ehl's pumps were removed from the premises and sold to a third party in August 1997. The controverted facts litigated at trial were whether Ehl consented to the replacement and whether Ehl personally visited the premises after the installation of the new pumps. Webb testified that he discussed changing the pumps with Ehl and obtained Ehl's approval for selling or trading in the old pumps before they were removed. Webb also claimed that he discussed the new pumps with Ehl when Ehl fueled at the station in 1997. Ehl testified that when he

went by the store after Webb leased it, there were never any new pumps, and that he did not discover that his pumps had been removed until May 1999. Ehl testified that he and Webb never discussed new fuel pumps and denied having consented to the change.

Webb defaulted on the commercial lease agreement in March 1999 and abandoned the premises early in 1999. Months later, Steinhagen noticed that vandals had cut the pump hoses and he had Jim White remove the new pumps from Ehl's premises. Kim Chavez took over the convenience store in April 2000 and arranged with PetroTex for the June 2000 installation of Tokheim brand pumps at the convenience store. The Tokheim pumps were installed at the convenience store at the time of trial.[3] Chavez, too, defaulted and in November 2000 closed the business she operated on the premises.

This litigation commenced July 13, 2000. The claims alleged in the original petition were also alleged in the amended pleading on which trial was held. Ehl sued Steinhagen and PetroTex for conversion. Those claims were ultimately reduced to the judgment now on appeal. Ehl sued Webb for violation of bailment duties, conversion, and breach of lease. Ehl's claims against Webb were reduced to a default judgment, which the trial court severed from the main action, and are not at issue in this appeal. Ehl also sued Kimberly Chavez and her husband, Alex Chavez, for breach of lease. The Chavezes failed to answer the suit, although Kim Chavez tes-

1. The fuel delivery system changed several times over a period of about five years. In this opinion, we refer to the dispensers at issue in this appeal as "Ehl's pumps" or "the old pumps."

2. The installation and removal of the newer, credit-ready pumps is pertinent to this litigation only for its effect on the accrual of the cause of action for converting the pumps re-

ferred to in the Webb lease. The ownership and disposition of what we call "the replacement pumps" or "the new pumps" is not at issue in this case.

3. These pumps were part of the matter in controversy of the counterclaim submitted to the jury.

tified during the trial. After trial but before judgment, the trial court granted Ehl's motion to non-suit the Chavezes. PetroTex filed a counterclaim against Ehl for conversion of equipment listed in Kim Chavez's contract with PetroTex and for filing groundless pleadings in bad faith. PetroTex's conversion claim was based upon Ehl's refusal to allow PetroTex onto Ehl's premises for the purpose of removing the Tokheim pumps.[4]

The jury found that both Steinhagen and PetroTex converted property owned by Ehl and that $35,431 would compensate Ehl for his damages, then found that either Steinhagen or PetroTex acted with malice or fraud in the conversion. The jury found that Ehl, through reasonable diligence, discovered or could have discovered that his fuel pumps were missing in "Fall to Winter '98", then found Ehl's action or inaction to be a waiver of his right to claim conversion. The jury failed to find that Ehl converted fuel dispensing equipment of PetroTex. The jury then assessed exemplary damages of $50,000 against Steinhagen and $30,000 against PetroTex. The trial court disregarded the jury's waiver finding and entered a judgment in the amount of $115,431.00 for Ehl.

■■■ The appellants' brief asks, "Did the trial court commit reversible error in applying the discovery rule to extend limitations on a cause of action clearly barred by the statute of limitations?" A cause of action for conversion must be commenced no later than two years after its accrual. Tex. Civ. Prac. & Rem.Code Ann. § 16.003 (Vernon 2002). When it applies, the "discovery rule" defers the accrual of a cause of action until the plaintiff discovers or, in the exercise of reasonable diligence, should discover the "nature of his injury." *Childs v. Haussecker*, 974 S.W.2d 31, 40 (Tex. 1998). The discovery rule only defers accrual of a cause of action until the plaintiff discovers, or should have discovered through reasonable diligence, "the injury and that it was likely caused by the wrongful acts of another." *Id.* Once these requirements are satisfied, "limitations commences, even if the plaintiff does not know the exact identity of the wrongdoer." *Id.* The appellants contend that Ehl's cause of action against them for conversion accrued on the date that the conversion occurred; that is, when White took possession of the pumps and paid PetroTex for them. The appellee contends that his cause of action for conversion accrued when he acquired knowledge that his pumps and the replacement pumps had been removed.

■■■ "[A] cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex.1996). However, two deferred accrual exceptions to the "legal injury rule" exist in limited circumstances. *Id.* at 4–5. The "discovery rule" rule has been applied where the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable. *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex.1996). But the discovery rule is applied to categories of cases where the nature of the injury is inherently undiscoverable, not to particular cases. *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex.1998). Thus, the Supreme Court de-

---

4. As the trial court reminded the parties when the issue of entry onto the property to remove the pumps was raised in a post-trial hearing, ownership of these pumps was not at issue in the trial. None of the appellants' issues relate to this counterclaim, which the judgment did not refer to but which was disposed of by implication in the final judgment for the plaintiffs.

clined to apply the discovery rule to cases where the injury in that particular case may well have been inherently undiscoverable, because the nature of the injury was not inherently undiscoverable for the category of cases at issue. *See Wagner & Brown, Ltd. v. Horwood,* 58 S.W.3d 732, 737 (Tex.2001)(excessive or improper charges resulting in the underpayment of royalties); *HECI Exploration Co. v. Neel,* 982 S.W.2d at 886 (damage to common oil and gas reservoir from illegal production); *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d at 457 (trade secret misappropriation).

■ In conversion cases, the general rule is that the statute of limitations begins to run at the time of the unlawful taking, when the legal injury occurs. *Rogers v. Ricane Enters., Inc.,* 930 S.W.2d 157, 166 (Tex.App.-Amarillo 1996, writ denied). The appellee cites *Hofland v. Elgin–Butler Brick Co.,* 834 S.W.2d 409, 414 (Tex.App.-Corpus Christi 1992, no writ), for the proposition that the discovery rule applies to his case. We find the case to be inapposite. *Hofland* applied the discovery rule to "the class of conversion cases composed of initial lawful possession, discovery of unequivocal acts of conversion, and no effective demand and refusal. . . ." *Id.*[5] Although Webb's initial possession of the property was lawfully obtained pursuant to the lease agreement, only Steinhagen's and PetroTex's conversion removal and sale of Ehl's pumps to White is at issue in this case. The class of cases to which this case belongs is the "unlawful possession" class of conversion cases. *See Sunwest Bank of El Paso v. Basil Smith Eng'g Co., Inc.,* 939 S.W.2d 671, 674 (Tex.App.-El Paso 1996, writ denied) (embezzlement);

*Autry v. Dearman,* 933 S.W.2d 182, 192–93 (Tex.App.-Houston [14th Dist.] 1996, writ denied) (conversion of lawsuit proceeds subject to subrogation); *Rogers v. Ricane Enters., Inc.,* 930 S.W.2d at 166 (conversion of oil and gas produced under void lease). The fact that a tenant was in possession of the pumps at the time the conversion was committed would not, in and of itself, trigger the application of the discovery rule. The case that articulated the legal injury rule, *Houston Water–Works Co. v. Kennedy,* 70 Tex. 233, 8 S.W. 36 (1888), involved damage to the interior of a structure held by a tenant. The cause of action accrued when the defendant cut an arch through an interior supporting beam not open to view by the landlord, who did not discover the injury until the exterior walls cracked. *Id.* at 37. We hold that the discovery rule does not apply in this case as an avoidance of the limitations defense.

■ Next, we consider whether accrual of Ehl's cause of action for conversion is deferred under the "fraudulent concealment doctrine." The discovery rule and the fraudulent concealment doctrine are distinct concepts that exist for different reasons. *Wagner & Brown, Ltd. v. Horwood,* 58 S.W.3d 732, 736 (Tex.2001). Ehl did not plead fraudulent concealment as an avoidance of accrual of his cause of action. He did, however, allege that the conversion was "fraudulent and malicious." These pleadings are quite specific, and allege as follows:

> The conversion of the fuel dispensing equipment by Defendants Steinhagen and PetroTex was fraudulent and malicious in that Defendants specifically intended to cause and knowingly did cause

---

**5.** The discovery rule does not apply to all conversion cases in which possession was initially lawful. *See Conoco, Inc. v. Amarillo Nat'l Bank,* 14 S.W.3d 325, 328 (Tex.App.- Amarillo 2000, no pet.) (The discovery rule does not apply to cases of conversion of collateral).

substantial injury to Mr. Ehl. Defendants knew that the fuel dispensing equipment was the property of Mr. Ehl, but Defendants nevertheless converted the equipment to their own use. Moreover, when Mr. Ehl was attempting to locate his fuel dispensing equipment, Defendant Steinhagen stated that he did not take it and that he did not know anything about the equipment. Such statement was contrary to his admission in this lawsuit that he did in fact take the equipment and retain the proceeds. Accordingly, Mr. Ehl asks that exemplary or punitive damages be awarded against Defendants Steinhagen and PetroTex.

■■ At trial, the attorney who formerly represented Ehl testified that on March 2, 2000, Steinhagen stated that Webb had taken Ehl's pumps. Concealment for the purposes of deferring accrual of a cause of action is concealment of the right of action. *Nichols v. Smith,* 507 S.W.2d 518 (Tex.1974). The tortfeasor's fraudulent concealment of his identity does not defer accrual. *Otis v. Scientific Atlanta, Inc.,* 612 S.W.2d 665 (Tex.Civ.App.-Dallas 1981, writ ref'd n.r.e.). Since May 1999, Ehl had known that his equipment was missing, and on August 9, 1999, a letter from Webb's attorney informed Ehl's counsel that "Mr. Harvey Steinhagen III, d/b/a PetroTex Fuels sold the two pumps for $9,000.00 . . . ." A statement by Steinhagen some nine months after the latest possible discovery date and almost seven months after the latest date on which he learned the appellants were possibly involved in the conversion is not evidence of fraudulent concealment of the conversion. Furthermore, it appears that Steinhagen's denial did not deter Ehl from suing Steinhagen and PetroTex, as the original petition was filed four months later joined both as original defendants to the suit. We conclude that fraudulent concealment is not available as an alternate, unpleaded ground for avoidance of the bar of limitations.

Issue Two is sustained. Because our holding disposes of the appeal, we do not address the remaining issues. We reverse the judgment of the trial court and render judgment that Bob A. Ehl take nothing against E.H. "Harvey" Steinhagen, III, and PetroTex Fuels, Inc.

REVERSED AND RENDERED.

DON BURGESS, Justice, concurring.

I concur. While I do not agree with the majority on the non-applicability of the discovery rule, I would affirm based on the jury finding of waiver. The jury found Mr. Ehl's actions or inactions constituted a waiver of his right to claim conversion. The trial judge disregarded this jury question finding there was no evidence to support it. There was evidence that Damon Webb, Mr. Ehl's lessee, discussed a "trade-out" of the old pumps in the Spring of 1997. There was also evidence that in the Fall of 1997, Mr. Ehl actually used the new pumps and discussed them with Webb. There was additional evidence that Mr. Ehl was told in August of 1999 that the two pumps had been sold for $9,000 and the money had been retained by Mr. Steinhagen. In May of 2000, Kim Chavez assumed the Webb lease and pumps were reinstalled. All of this is *some* evidence of waiver as it was defined for the jury. Consequently, I would hold the trial judge erred in disregarding the jury finding, sustain issue one, and reverse and render a take-nothing judgment.