In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-144 CV


____________________



LEURA JEAN GIRSH and CHARLES S. GIRSH, SR., Appellants



V.



 PEGGY ST. JOHN, Appellee






On Appeal from the 359th District Court


Montgomery County, Texas


Trial Cause No. 01-03-02096-CV






O P I N I O N 


 Leura Jean Girsh and her husband, Charles S. Girsh, Sr. ("the Girshes") appeal from
a judgment entered by the trial court granting injunctive relief, and awarding civil damages
along with attorney's fees to plaintiff, Peggy St. John to enforce a restrictive covenant
running with residential property located in the Tall Timbers subdivision, Section Two, in
Montgomery County, Texas. The Girshes answered by pleading St. John lacked standing to
bring suit, and by pleading the defenses of laches, abandonment, and limitations. Trial was
to the court, with both parties presenting testimony and physical evidence in their respective
cases. The trial court ultimately ruled in favor of St. John, and issued findings of fact and
conclusions of law. On appeal, the Girshes complain of the trial court's ruling that St. John
had standing to file suit (issue two), and of the trial court's failure to find the Girshes
established any of their defenses (issues one and three). Being a question of law, the
standing issue must be addressed first. (1)

 "Standing is a constitutional prerequisite to maintaining suit." Tex. Dep't of Transp.
v. City of Sunset Valley, 146 S.W.3d 637, 646 (Tex. 2004); see Tex. Ass'n of Bus. v. Tex. Air
Control Bd., 852 S.W.2d 440, 445 (Tex. 1993). It is also a component of subject matter
jurisdiction, and, as such, cannot be waived and may be raised for the first time on appeal. 
See Tex. Ass'n of Bus., 852 S.W.2d at 445. Therefore, the issue of standing is reviewed de
novo. See City of Sunset Valley, 146 S.W.3d at 646. To establish standing, a party must
show a justiciable interest by alleging a threatened or actual injury. See Allstate Indem. Co.
v. Forth, 204 S.W.3d 795, 796 (Tex. 2006). 

 Generally, any person entitled to benefit under the terms of a restrictive covenant may
enforce it. See Anderson v. New Property Owners' Ass'n of Newport, Inc., 122 S.W.3d 378,
384 (Tex. App.--Texarkana 2003, pet. denied) (citing Calvary Temple v. Taylor, 288 S.W.2d
868, 872-73 (Tex. Civ. App.--Galveston 1956, no writ)). This has been interpreted as
meaning that an interested property owner may sue to enforce a restrictive covenant. See
Anderson, 122 S.W.3d at 384-85 (citing Giles v. Cardenas, 697 S.W.2d 422, 427 (Tex. App.-
-San Antonio 1985, writ ref'd n.r.e.)). In Powell v. Tall Timbers Property Association,
Incorporated, No. 09-01-495-CV, 2002 WL 1990930 (Tex. App.--Beaumont, Aug. 29, 2002,
no pet.) (not designated for publication), we examined certain provisions of the same
restrictive covenant that is now before us in the context of a suit to collect unpaid
maintenance fees. 2002 WL 1990930, at *1. The defendants there counterclaimed for, inter
alia, breach of implied duty of good faith and fair dealing, and breach of fiduciary duty. Id.
2002 WL 1990930, at *1 n.3. After examining paragraph "1" of the restrictions, we stated
the following:

 As explained in Simms v. Lakewood Village Property Owners Ass'n, Inc., 895
S.W.2d 779, 787 (Tex. App.--Corpus Christi 1995, no writ), "[t]he terms
'right' and 'duty' are not synonymous, but even if they were, appellants, as
owners, would have the same duty to enforce the covenants as the association. 
Thus, the association and appellants would each have the same cause of action
against each other, and such a suit would have an absurd result and serve no
useful purpose." 895 S.W.2d at 787. Here, the terms of the deed restrictions
impose rights of enforcement, but not duties. We find, as a matter of law, that
the Association had no duty to enforce the deed restrictions. The language of
the deed restrictions is clear and unambiguous. 


Powell, 2002 WL 1990930, at *2. As we found in Powell, the restrictive covenant authorizes
property owners in the Tall Timbers, Section Two subdivision to enforce all provisions
contained therein.

 The record before us contains a copy of the plat and dedication instrument pertaining
to the Tall Timbers, Section Two subdivision, a copy of the restrictive covenant pertaining
to the Tall Timbers, Section Two subdivision filed with the Montgomery County Clerk's
Office in 1965, as well as copies of deeds for certain numbered lots located in the Tall
Timbers, Section Two subdivision purchased by St. John in 1976. Each of St. John's deeds
explicitly states that the specifically numbered lot is conveyed subject to any and all
"restrictions" or "valid covenants [and/or] restrictions[.]" The covenant language is also
quite explicit as it authorizes property owners to "prosecute any proceeding at law or equity"
against violations or attempted violations of the enumerated restrictions. Notwithstanding
that St. John's lots 150 and 151 were originally platted as "reserved area," her deeds to the
numbered lots are expressly burdened with the limitations contained in the restrictive
covenant in question. 

 To establish standing, a party must have a sufficient relationship with the lawsuit so
as to have a justiciable interest in its outcome. See Austin Nursing Ctr., Inc. v. Lovato, 171
S.W.3d 845, 848 (Tex. 2005). "A plaintiff has standing when it is personally aggrieved,
regardless of whether it is acting with legal authority. . . ." Id. at 848 (quoting Nootsie, Ltd.
v. Williamson County Appraisal Dist., 925 S.W.2d 659, 661 (Tex. 1996)). Based upon the
pleadings and the evidence in the record before us, we find that St. John established her
standing as a matter of law to file suit to enforce the provisions of the Tall Timbers, Section
Two restrictive covenants. The Girshes' second issue is overruled. 

 In their first issue, the Girshes argue their evidence established that limitations had run
on St. John's enforcement suit as a matter of law. With regard to St. John's invocation of the
discovery rule, the Girshes note that St. John failed to establish the rule's applicability
because she failed to show that the Girshes' violation was undiscoverable even when
exercising reasonable diligence. The pertinent findings/conclusions on this point read as
follows:

 Findings of Fact


 4. Sometime in [] late 1998 or early 1999 Plaintiff discovered a Mobile Home
(the "Mobile Home") on the Property of the Defendants.


 5. Such Mobile Home was undiscoverable until discovered by Plaintiff in the
fall of 1997 or early 1998.


 10. Defendants [were] aware of the Mobile Home located on the Property and
that such Mobile Home was a violation of the Deed Restrictions of Tall
Timbers, Section Two.


 Conclusions of Law


 5. The Statute of Limitations for enforcement of deed restrictions is four
years.


 6. The Statute of Limitations in this action was tolled until Plaintiff discovered
the Mobile Home located [on] the Property.


 The trial court correctly recognizes that the statute of limitations for suits to enforce
deed restrictions is four years. See Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (Vernon
1997); Air Park-Dallas Zoning Comm. v. Crow-Billingsley Airpark, Ltd., 109 S.W.3d 900,
911 (Tex. App.--Dallas 2003, no pet.); Malmgren v. Inverness Forest Residents Civic Club,
Inc., 981 S.W.2d 875, 877 (Tex. App.--Houston [1st Dist.] 1998, no pet.); Colton v. Silsbee
State Bank, 952 S.W.2d 625, 630 (Tex. App.--Beaumont 1997, no writ); Buzbee v.
Castlewood Civic Club,737 S.W.2d 366, 368 (Tex. App.--Houston [14th Dist.] 1987, no
writ); Park v. Baxter, 572 S.W.2d 794, 795 (Tex. App.--Tyler 1978, writ ref'd n.r.e.). An
enforcement action accrues upon breach of the restrictive covenant. See Colton, 952 S.W.2d
at 630; Baxter, 572 S.W.2d at 795. In the instant case, the evidence established that the
mobile home in question was purchased by the Girshes in 1984 and placed on their property
on or about that same year. It was also established that paragraph "10" of the restrictive
covenant in question contained the following pertinent provision: "No trailer house or
covered trailer shall at any time be erected or placed on any lot or tract for any purpose
whatsoever." The record evidence, therefore, establishes the Girshes breached the restrictive
covenant when they moved the mobile home onto their property in 1984. 

 At trial, St. John presented evidence in an attempt to avoid her suit's being barred by
the four-year statute of limitations. The essence of her position at trial was that she did not
discover the existence of the mobile home in the Girshes' back yard until late 1998 or early
1999 because of an overgrowth of "forest or trees." St. John admitted she had no idea when
the mobile home was placed on the Girshes' property. St. John introduced photographs of
the mobile home with the photographer apparently standing on a public street in the
subdivision. From that vantage point, a vacant lot is situated between the photographer and
the view of the mobile home. St. John contended that until the Girshes' neighbor, Mark
McClain, used a "dozer" to clear this vacant lot of "underbrush, trees, large trees, small trees
and brush[,]" the mobile home was not visible. St. John testified that McClain must have
cleared off this vacant lot in late 1998 or early 1999 "because that's when we discovered the
mobile home, we could see it." Because St. John's photographs were taken after the lot had
been cleared, they do not depict any significant obstruction and the mobile home is plainly
visible. St. John also testified that at some point in time McClain parked a "large Ryder
rental truck" on the vacant lot that apparently obstructed the view of the mobile home. 
However, except for the testimony of St. John's husband, James, the testimony of St. John's
other witnesses did not establish the trailer was completely invisible from view prior to late
1998 or early 1999, but did show that, at some point in time, some of the witnesses became
aware of the trailer's presence in the Girshes' back yard. 

 The Girshes and their witnesses testified that the trailer had been visible to the public
well before late 1997. Additionally, Mark McClain testified that he cleared the lot separating
his property from the Girshes' property sometime around 1976 to 1979. McClain added that
from that point until the time of trial he had not permitted the grass on the lot to grow any
higher than waist-high. He also testified that he did park a work-truck on his lot overnight
for about two to three nights per week, and only for the "few months" he worked for the
company that owned the truck. McClain also indicated that he had "dozers" on his property
on several occasions over the years, but only once to clear the lot next to Girshes' property. 

 In Via Net v. TIG Insurance Company, 211 S.W.3d 310 (Tex. 2006) (per curiam), the
Texas Supreme Court noted that it has restricted the use of the discovery rule to "exceptional
cases" so as to avoid defeating the purposes behind the limitations statutes. Via Net, 211
S.W.3d at 313 (citing S.V. v. R.V., 933 S.W.2d 1, 25 (Tex. 1996)). The Court's more recent
history vis-a-vis the discovery rule was detailed in HECI Exploration Company v. Neel, 982
S.W.2d 881 (Tex. 1998), as follows:

 The discovery rule has been applied in limited categories of cases to
defer accrual of a cause of action until the plaintiff knew or, exercising
reasonable diligence, should have known of the facts giving rise to a cause of
action. See Computer Associates International, Inc. v. Altai, Inc., 918 S.W.2d
453, 455 (Tex. 1996). Historically, the reasoning that supported this Court's
decisions to apply the discovery rule in particular cases was "diverse,
somewhat inconsistent, and often overly broad." S.V. v. R.V., 933 S.W.2d 1,
5-6 (Tex. 1996). We attempted to bring predictability and consistency to our
jurisprudence in this area in Altai, 918 S.W.2d at 455-56, and S.V. v. R.V., 933
S.W.2d at 5-6. In those decisions, we articulated two unifying principles that
generally apply in discovery rule cases. They are that the nature of the injury
must be inherently undiscoverable and that the injury itself must be objectively
verifiable. See Altai, 918 S.W.2d at 456; S.V., 933 S.W.2d at 6. We explained
in Altai that the applicability of the discovery rule is determined categorically. 
Although the particular injury in Altai may not have been discovered, it was
the type of injury that generally is discoverable by the exercise of reasonable
diligence: "While some trade secret misappropriations might not be quickly
discovered, this isolated fact does not alter the reality that, in most cases, trade
secret misappropriation generally is capable of detection within the time
allotted for bringing such suits." 918 S.W.2d at 457.


982 S.W.2d at 886. 

 There is no serious dispute that the injury -- the Girshes' violation of the restrictive
covenant - - was objectively verifiable by the presence of the prohibited item (the mobile
home) on the Girshes' property. The question to be decided is whether this is the type of
injury that generally is discoverable by exercising reasonable diligence. Id. The Court in Via
Net added to the analysis in the following manner:

 "An injury is inherently undiscoverable if it is, by its nature, unlikely to be
discovered within the prescribed limitations period despite due diligence." 
Wagner & Brown, Ltd. v. Horwood, 58 S.W.3d 732, 734-35 (Tex. 2001). This
legal question is decided on a categorical rather than case-specific basis; the
focus is on whether a type of injury rather than a particular injury was
discoverable. Id. at 736; Apex Towing Co. v. Tolin, 41 S.W.3d 118, 122 (Tex.
2001).


Via Net, 211 S.W.3d at 313-14. We reiterate that the type of injury presented in the record
is the placing of a full-size mobile home (approximately 12 feet by 46 feet) on a residential
lot located in the midst of a populated residential subdivision in violation of a per se
prohibition against trailers on residential property for any purpose. 

 We are unable to hold that such a category of injury is unlikely to be discovered
within the four-year limitations period with the exercise of due diligence. We are guided in
this by the Supreme Court's discussion of the discovery rule in HECI Exploration. In that
case, the plaintiffs, owners of royalty interests in an oil and gas lease, sued their lessee,
HECI, in 1993 because HECI failed to notify the plaintiffs that it had sued and obtained a
judgment against an operator of an adjoining lease for damage to the plaintiffs' reservoir
from illegal production. HECI Exploration, 982 S.W.2d at 884. The illegal production
apparently began as early as 1985, and ended in December 1988, when oil and gas reserves
otherwise recoverable through the well in question were permanently lost. Id. In reversing
the court of appeals's application of the discovery rule to certain causes of action, the
Supreme Court set out the following rationale:

 As owners of an interest in the mineral estate, the Neels had some
obligation to exercise reasonable diligence in protecting their interests. This
includes exercising reasonable diligence in determining whether adjoining
operators have inflicted damage. Royalty owners cannot be oblivious to the
existence of other operators in the area or the existence of a common reservoir. 
In some cases, wells visible on neighboring properties may put royalty owners
on inquiry. In any event, a royalty owner should determine whether a common
reservoir underlies its lease because it knows or should know that, when there
are other wells drilled in a common reservoir, there is the potential for
drainage or damage to the reservoir. 


Id. at 886.

 As was noted above, the restrictive covenant in question authorizes any property
owner in the Tall Timbers, Section Two subdivision to enforce all provisions contained
therein. Echoing the Court in HECI Exploration, we find that, as an owner of property in
Tall Timbers, Section Two, St. John "had some obligation to exercise reasonable diligence
in protecting [her] interests." See id. The record evidence indicates the mobile home was
present in the Girshes' back yard openly, and there is no evidence of the use of artificial
devices or methods to camouflage or hide it. St. John's request for application of the
discovery rule would require us to hold a full-size mobile home's presence on a residential
lot in violation of a restrictive covenant, with said lot located in a highly populated
subdivision, is a category of injury inherently undiscoverable even with the exercise of
reasonable diligence, because of the presence of indigenous flora spontaneously growing
nearby. A decision by us favorable to St. John would mean that she had established that the
category of reasonably diligent property owners would not discover the existence of a full-size mobile home on a residential lot in the midst of a populated subdivision during the four-year limitations period. See Royce Homes, L.P. v. Dyck, No. 09-06-034-CV, 2006 WL
3094323, at *4 (Tex. App.--Beaumont, Nov. 2, 2006, no pet.). 

 In a trial on the merits, the party seeking the benefit of the discovery rule to avoid
limitations has the burden of pleading and proving the discovery rule. See Rhone-Poulenc,
Inc. v. Steel, 997 S.W.2d 217, 223 n.3 (Tex. 1999); Woods v. William M. Mercer, Inc., 769
S.W.2d 515, 518 (Tex. 1988). The discovery rule is a plea in confession and avoidance.
Woods, 769 S.W.2d at 517. The Court in Woods further stated: 

 A plea in confession and avoidance is one which avows and confesses the truth
in the averments of fact in the petition, either expressly or by implication, but
then proceeds to allege new matter which tends to deprive the facts admitted
of their ordinary legal effect, or to obviate, neutralize, or avoid them.


Id. (citing Black's Law Dictionary, 269 (5th ed. 1979)). The Supreme Court has made it
abundantly clear that the discovery rule is a limited exception to strict compliance with the
statute of limitations. See Via Net, 211 S.W.3d at 313; Altai, Inc., 918 S.W.2d at 457 (citing
Trinity River Auth. v. URS Consultants, 889 S.W.2d 259, 262 (Tex. 1994)). It must be
remembered that "'the primary purpose of limitations is to prevent litigation of stale or
fraudulent claims. . . .'" Altai, Inc., 918 S.W.2d at 457 (quoting Robinson v. Weaver, 550
S.W.2d 18, 20 (Tex. 1977)). 

 In the instant case, the Girshes firmly established the mobile home was moved onto
their residential lot in the early 1980's, most likely in 1984 or 1985. St. John testified that she
had no idea when the mobile home was moved onto the Girshes' property, but contends the
mobile home was inherently undiscoverable until "the fall of 1997," or "late 1998 or early
1999." (2) Even taking the year 1985 as the latest established date of the trailer's appearance
on the Girshes' lot, St. John fails to establish what, if any, restrictive covenant "enforcement"
activity she was specifically involved in, other than her unrewarding experience with the
property owners' association, so as to establish reasonable diligence in learning of the mobile
home's presence on the residential lot. In other words, the roughly twelve or thirteen-year
gap between the trailer's arrival at the Girshes' and St. John's awareness of its existence is
largely unaccounted for by St. John, except by resort to the excessive growth of trees, brush,
and bushes. While the record does contain some testimony regarding the establishment of
a "neighborhood watch" group comprised of certain property owners, it is not shown when
that group was formed, or how it operated, in any detail. It appears from the testimony that
it functioned as neighborhood security and as a lookout for violators of the restrictive
covenant, but the record indicates nothing further about the group. In reversing the court of
appeals's application of the discovery rule, the Court in Via Net concluded its analysis with
the following observation:

 Our attempts to bring predictability and consistency to discovery rule
jurisprudence have focused on types of injury, not causes of action. Some
contract breaches may be inherently undiscoverable and objectively verifiable. 
But those cases should be rare, as diligent contracting parties should generally
discover any breach during the relatively long four-year limitations period
provided for such claims. 


Via Net, 211 S.W.3d at 314-15 (citations omitted). The instant cause of action was also
subject to a "relatively long four-year limitations period." Accordingly, we find that St. John
failed to establish that the presence of a full-size mobile home on a lot in a populated
residential subdivision was inherently undiscoverable. See Dyck, 2006 WL 3094323, at *4. 
We hold, therefore, that the discovery rule was inapplicable to defer accrual of St. John's
cause of action against the Girshes to enforce the Tall Timbers, Section Two restrictive
covenant as the four-year statute of limitations bars the claims asserted by St. John. We
reverse the judgment of the trial court and render judgment that St. John take nothing. See
Tex. R. App. P. 43.2(c); Steinhagen v. Ehl, 126 S.W.3d 623, 628 (Tex. App.--Beaumont
2004, pet. denied).

 REVERSED AND RENDERED. 


 __________________________________

 CHARLES KREGER

 Justice


Submitted on October 19, 2006

Opinion Delivered March 29, 2007



Before McKeithen, C.J., Kreger and Horton, JJ.
1. We note here that the Girshes' brief fails to contain a concise statement of the
issues presented for review which results in the concomitant failure to provide a clear and
concise argument in support of said issues. See Tex. R. App. P. 38.1(e), (h). Although
we elect to address the issues here, parties submitting such a brief risk having it stricken
and the appeal decided as if no brief had been filed. See Tex. R. App. P. 38.9 (a).
2. Assuming without deciding the 1999 discovery year to be the correct one, the
record is silent as to the reason an additional two years lapsed before St. John filed suit to
have the mobile home removed as the original petition is file-stamped March 29, 2001.