

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00094-CV

———————————————

MCMC AUTO LTD., Appellant

v.

SIDECARS, INC., Appellee

On Appeal from the 153rd District Court
Tarrant County, Texas
Trial Court No. 153-285175-16

Dissenting Memorandum Opinion by Justice Birdwell

## DISSENTING MEMORANDUM OPINION

The resolution of this appeal turns on one question: When did the contract and tort claims asserted by MCMC Auto Ltd. against SideCars, Inc. accrue? Unfortunately, the majority's opinion does not, with any specificity, answer the question. Rather, with explicit reliance on what "MCMC knew" from October 2010 and November 2010 rulings by a Travis County district court in SideCars's suit against the Texas Department of Insurance (the Department), the majority holds that "all of MCMC's causes of action accrued" on a nebulous date that was "no later than November 2010." Majority op. at 13–14. MCMC's knowledge was not as fixed as the majority characterizes because the 2010 rulings upon which the majority relies remained challenged and uncertain until the exhaustion of SideCars's appellate remedies in 2014.[1] I would hold that the unsettled and pending question of the legality of SideCars's collateral protection program—a question upon which MCMC's injury and the validity of its claims wholly depended—delayed the accrual of limitations until the illegality became certain. Because the majority does not so hold, I dissent.

---

[1]In addition to the rulings by the Travis County district court, the majority relies on MCMC's knowledge in 2010 that the "Department had concluded that SideCars [was] engaging in the unauthorized business of insurance." Majority op. at 13. But as explained below, the record establishes that the Department and the Texas Office of Consumer Credit Commissioner (OCCC) treated that conclusion as preliminary and unsettled and deferred acting upon the conclusion until the resolution of appeals in SideCars's litigation against the Department.

As the majority recognizes, a cause of action accrues when a "wrongful act causes some legal injury." *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015); *see PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 93 (Tex. 2004) (stating that limitations runs upon a "wrongful injury"). But what happens when whether a defendant's act was wrongful and whether a plaintiff was injured turns upon the resolution of a pending legal proceeding? Answering that question, Texas courts have held that when the certainty of a plaintiff's injury and the validity of a plaintiff's cause of action hinge upon the resolution of a pending legal proceeding involving the same or similar parties, limitations does not run until the final resolution of the related proceeding.

For example, in *Hughes v. Mahaney & Higgins*, our supreme court considered whether limitations had run in a legal malpractice case during the pendency of appeals in the underlying suit in which the malpractice allegedly occurred. 821 S.W.2d 154, 155 (Tex. 1991). There, the plaintiffs alleged that their attorney's malpractice had caused a court of appeals to conclude that they lacked standing to seek termination of a parent's parental rights. *Id.* at 156. But the plaintiffs waited to file the malpractice suit until they unsuccessfully sought the supreme court's review of the court of appeals's decision on standing in the termination suit. *Id.* When the plaintiffs filed the malpractice suit, the attorney sought summary judgment on limitations. *Id.*

The supreme court held that limitations did not run during the pendency of the appeals in the underlying suit. *Id.* at 156–58. The court gave two principles

supporting its decision: (1) requiring the plaintiffs to pursue their malpractice claim (which turned on an assertion that their attorney's malpractice had resulted in their lack of standing to pursue termination) while appealing the decision in the termination suit (which rested on an assertion that they had standing) could have compromised their likelihood of success in both suits,[2] and (2) "the viability of the second cause of action depend[ed] on the outcome of the first." *Id.* at 157; *see Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 118, 121–22 (Tex. 2001) (reaffirming the *Hughes* rule, describing the two policy considerations supporting the rule, and explaining that those two policy concerns "appropriately balance the competing concerns of the need to bar stale claims and avoid prejudice to defendants yet preserve a reasonable opportunity for plaintiffs to pursue legitimate claims"); *Rogers v. Ricane Enters.*, 930 S.W.2d 157, 167 (Tex. App.—Amarillo 1996, writ denied) (op. on remand) ("The teaching of [*Hughes*] . . . is that a statute of limitations is tolled for a second cause of action in instances where the viability of the second cause of action necessarily depends upon the

---

[2]A similar concern exists here. While MCMC was not a party to SideCars's suit against the Department, a suit by MCMC against SideCars for falsely representing that the collateral protection coverage program was legal before the final resolution of that issue in SideCars's litigation with the Department would have equated to a premature admission by MCMC that the premiums it collected were unauthorized and were subject to repayment.

outcome of the first case and the pursuit of the second suit prior to that outcome would either be improper or result in judicial complications.").[3]

The two principles leading to the result in *Hughes* have led to similar decisions before and after *Hughes* in circumstances unrelated to legal malpractice. For example, in *Hays v. Talley*, a court of civil appeals held that limitations did not begin to run on a suit related to a breach of a warranty of title of real property until the final resolution of a related suit in which a court "made evident the want of any title"—the injury—in the plaintiff who filed the claim for the breach. 161 S.W. 429, 430 (Tex. Civ. App.— Texarkana 1913, no writ). And in *Cavitt v. Amsler*, a court of civil appeals held that limitations did not run in Cavitt's suit against a milling company that had refused to transfer stock to him until the conclusion of an appeal in his suit against another party, Amsler, that established his rights to title and possession of the stock. 242 S.W. 246, 248–49 (Tex. Civ. App.—Austin 1922, writ dism'd w.o.j.) (op. on reh'g). The court explained,

> We hold that the statute of limitation was suspended during the appeal referred to, for the reason that, if [Cavitt] knew that the milling company was paying dividends to Amsler, and had filed suit against the

---

[3]In asserting that MCMC does not argue for the principles from *Hughes* to apply to this case, the majority reads MCMC's briefing too narrowly. *See* Majority op. at 15 n.6. MCMC argues that its injury was not certain in 2010 because "any order of restitution from the OCCC was contingent on the outcome of SideCars's lawsuit against the [Department]." This argument, liberally and reasonably construed, invokes the principles of *Hughes*. *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017) (stating that appellate courts should construe briefs reasonably, yet liberally).

5

> company and against Amsler to recover the same, the company could and doubtless would have replied that the issue involved in such suit was the ownership of the stock claimed by both Amsler and Cavitt; that Cavitt could not recover dividends until he established his title to the stock; *and that this was the issue pending in the case on appeal.*

*Id.* (emphasis added); *see also Merry Homes, Inc. v. Dao*, No. 14-16-00724-CV, 2017 WL 4159206, at *3 (Tex. App.—Houston [14th Dist.] Sept. 19, 2017, no pet.) (mem. op.) ("[C]ourts have noted that the accrual date on a claim may be delayed where the viability of a cause of action depends upon the outcome of another case, or a legal impediment delays the party from bringing the cause of action."); *Pease v. State*, 228 S.W. 269, 270–71 (Tex. Civ. App.—San Antonio 1921, writ ref'd) (holding that limitations in a plaintiff's suit for salary as mayor of Corpus Christi did not accrue until the final decision in another proceeding establishing that the defendant was not entitled to that job); *Fields v. Austin*, 30 S.W. 386, 387 (Tex. Civ. App.—Dallas 1895, writ ref'd) (holding that a cause of action for rent did not accrue until all appeals were exhausted on a suit to determine title to land).

These decisions that delay a plaintiff's obligation to file a suit until a pending suit affecting the dispute between the parties resolves and the plaintiff's injury with respect to a particular defendant becomes certain serve several recognized interests. They protect plaintiffs from the "legally untenable position of speculating about hypothetical or potential future injuries." *Fisk v. United States*, 657 F.2d 167, 171 (7th Cir. 1981). They promote principles of standing and ripeness, which require concrete, actual, and particularized injuries, as opposed to contingent or remote injuries. *See*

6

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs.*, 528 U.S. 167, 180, 120 S. Ct. 693, 704 (2000); *Waco ISD v. Gibson*, 22 S.W.3d 849, 852 (Tex. 2000); *see also City of Anson v. Harper*, 216 S.W.3d 384, 390 (Tex. App.—Eastland 2006, no pet.) (holding that plaintiffs' suit concerning a city's plan to build a landfill was not ripe because the city's permit application with the Texas Commission on Environmental Quality was still pending and because "[w]hat might happen if the . . . permit application [was] approved [did] not present a ripe controversy"). They discourage "premature, possibly useless, litigation." *Diaz v. Piquette*, 496 So. 2d 239, 240 (Fla. Dist. Ct. App. 1986). And they avoid the possibility of conflicting results reached in different suits litigated in different courts. *See Rogers*, 930 S.W.2d at 167.

Under the narrow facts of this appeal, the decisions and principles articulated above should compel this court to hold that limitations did not begin accruing until the exhaustion of appeals in SideCars's suit against the Department. In September 2010, OCCC informed MCMC that MCMC's obligation to pay restitution to collateral protection coverage customers was uncertain and contingent on further developments. In a letter that OCCC sent to MCMC that month, OCCC stated,

> MCMC . . . offers a product to retail buyers described by its own documents as . . . collateral protection coverage . . . . MCMC . . . also "force places" this product on retail buyers under certain circumstances. . . . *[I]t is unknown if the character of this product classifies it as an insurance product. This issue will be referred to Austin for further consideration. Officials in Austin will contact MCMC . . . if further information or clarification is necessary.* [Emphasis added.]

OCCC's September 2010 letter implied, therefore, that any injury to MCMC caused by SideCars's collateral protection coverage program depended on a resolution of the legal validity of that program. And OCCC's July 2016 letter to MCMC establishes that OCCC's position in that regard remained under "further consideration" until the conclusion of SideCars's litigation with the Department. That letter stated that OCCC had informed SideCars in October 2010 that dealers who had used SideCars's program would be required to pay restitution, but the letter further stated, "As [SideCars] and [the Department] were already involved in litigation over the legality of [SideCars's] program, it was determined that . . . [OCCC] should refrain from initiating further action until the completion of the judicial process."[4] In OCCC's October 2016 "Order to Cease and Desist, and to Make Restitution," OCCC expressly relied on the final ruling against SideCars in its litigation with the Department. Likewise, in OCCC's November 2016 "Agreed Order," OCCC relied on that ruling to recite that MCMC had "charged and received unauthorized premiums in connection with the policy marketed by SideCars . . . for the period of March 1, 2010 to August 31, 2010."

OCCC's letters and orders before and after the resolution of SideCars's litigation with the Department establish that MCMC's obligation to repay premiums depended on a final resolution of SideCars's contest to the Department's claim that

---

[4]OCCC's June 2015 letter to MCMC contained similar language.

SideCars's collateral protection coverage program was illegal. Until the exhaustion of appeals in SideCars's suit against the Department, SideCars, OCCC, and MCMC *all* considered the legality of SideCars's collateral protection program and MCMC's liability for return of the premiums to be uncertain and contested.

Finally, and most importantly, the merits of every claim that MCMC has asserted against SideCars wholly depended on the outcome in SideCars's suit. *See Hughes*, 821 S.W.2d at 157 ("Limitations are tolled for the second cause of action because the viability of the second cause of action depends on the outcome of the first."). A final resolution in SideCars's suit against the Department that declared the legality of SideCars's program would have signified that SideCars committed no wrongful act and would have foreclosed MCMC's claims of breach of contract, fraud, fraudulent inducement, fraud by nondisclosure, negligent misrepresentation, and violation of the Texas Insurance Code.[5] *See KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 749 (Tex. 1999) (stating that accrual depends upon a plaintiff's knowledge of a "wrongfully caused injury").

---

[5]I disagree, therefore, with the majority's conclusion that MCMC's injury was not "contingent upon a future event." Majority op. at 15. MCMC's live pleading indicates that it bases all of its claims on the illegality of SideCars's program and on SideCars's representations and warranties that the program was legal, each of which hinged on the final resolution of SideCars's suit against the Department.

SideCars argues, and the majority appears to reason, that limitations accrued at some point in 2010[6] because MCMC knew at that time of the Department's preliminary conclusion that SideCars's program "was unauthorized," knew of the "exact extent of the top limit of its damages," and knew of the ruling by the trial court in SideCars's case against the Department. But SideCars contested the Department's conclusion and the trial court's ruling through the litigation and appellate processes and did not *itself* have fixed, final knowledge of the program's illegality until 2014. We should not hold that the Department's or the Travis County district court's preliminary opinions of illegality bound *MCMC* to immediately litigate its claims against SideCars when *SideCars* refused to be bound by those same opinions. Rather, we should conclude that limitations principles cannot support allowing SideCars to benefit from the state of uncertainty of the legality of its program caused by its ultimately meritless suit contesting the Department's preliminary opinion of illegality. *See Conoco, Inc. v. Amarillo Nat'l Bank*, 14 S.W.3d 325, 327 (Tex. App.—Amarillo 2000, no pet.) (stating that accrual dates should not lead to "individual injustices").

For all of these reasons, under the legal principles discussed above, I would hold that limitations did not begin to run on MCMC's claims against SideCars until 2014, when the illegality of SideCars's collateral protection coverage program—the

---

[6]Similar to the majority's statement that limitations accrued "no later than November 2010," SideCars proposes five dates in 2010 when limitations might have accrued.

10

axis of the alleged wrong upon which all of MCMC's claims depend—went from contested and unsettled to fixed and certain, therefore substantiating MCMC's legal injury.[7] *See Hughes*, 821 S.W.2d at 157; *Cavitt*, 242 S.W. at 248–49; *Hays*, 161 S.W. at 430. I would therefore hold that MCMC filed its suit within the limitations periods corresponding to each of its claims and that the trial court erred by granting summary judgment for SideCars. Because the majority reaches the opposite conclusion, I dissent.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: October 25, 2018

---

[7] I would hold that limitations began to run in 2014, when MCMC's legal *injuries* became fixed and evident, even though some *damages*, including OCCC's later demand for MCMC to repay premiums as a result of the resolution of SideCars's case against the Department, had not occurred at that time.